[No. 6305.]

HACKETT ET AL. v. THE LARIMER & WELD RESERVOIR COMPANY.

1. **Parties—Plaintiffs**—A reservoir company having by contract with an irrigating company, acquired the right to conduct the water collected in its reservoir, through the ditch of the latter company, may maintain a bill for an injunction against those who unlawfully divert the water, while in its course through the ditch, without joining the irrigating company. The circumstance that under the contract, the superintendent of the irrigating company is to distribute the waters of the reservoir, does not change the result.—(181, 182)

2. **Pleadings—Conclusions of Law**—In the same case it was held that an averment that the plaintiff had acquired a priority of appropriation from a natural stream, without setting forth the facts showing such appropriation, was sufficient; that the question of priority of appropriation was not involved.—(183)

3. **Water Rights—Contract Construed**—The right, by contract with an irrigating company, to have water from the ditch of that company for irrigating lands, confers no right to take and divert the waters of a reservoir which another corporation is entitled to carry through the ditch as a conduit.—(184, 186)

4. **Easement in the Use of Water—Prescription**—In the same case held that the taking and use of water from the ditch, for a long series of years, without objection from the owners of the reservoir—it not appearing that any water derived from the reservoir was so taken and used—was held not to confer an easement by prescription, as against the reservoir company, nor convict it of laches, even though the waters accumulated in the reservoir were, when turned into the ditch, so mingled with other waters as to make it impossible to determine what proportion thereof was obtained from the reservoir.—(186)

It was the duty of the owner of the canal, in such case to put in measuring weirs so that the water might be properly distributed, but its failure to perform this duty in no manner diminished the rights of the owner of the reservoir.—(186)

5. **Pleading—Prescription**—Plea of a prescriptive right to divert and take the waters of a reservoir, while being afterwards carried through the canal, must show the taking and enjoyment of the waters of the reservoir. An averment that the defendants had for a long series of years, "diverted water from the canal without let or hindrance, etc.," not averring that the water so diverted was water from the reservoir, is insufficient.—(186)

6. **Judgment—Upon Whom Conclusive**—A judgment has no effect upon the rights of one not made party to the action, even though he has notice of its pendency. He is not under duty to intervene.—(187)

7. **Appeals—Failure to Find Immaterial Issues**, is not error. —(189, 190)

*Error to Larimer District Court*—Hon. JAMES E. GARRIGUES, Judge.

Messrs. LEFTWICH & CROSE, for plaintiffs in error.

Messrs. RHODES, TEMPLE & FOSTER, for defendant in error.

Mr. JUSTICE GABBERT delivered the opinion of the court:

Plaintiffs in error, in an action brought against them by the defendant in error, were enjoined from interfering with the flow of water in the canal of The

Larimer & Weld Irrigation Company, which had been turned into that conduit by defendant in error, from its reservoir. They were also enjoined from interfering with the headgates of the irrigation company, except upon the order of its superintendent, and from in any manner interfering with him in the discharge of his duties as such superintendent while engaged in superintending the canal of the irrigation company during the flow of water therein from the reservoir of the defendant in error. In considering the questions urged by counsel for plaintiffs in error in support of their contention that the judgment is erroneous, we shall refer to the parties as plaintiff and defendants, which was their relation in the court below.

The allegations of the complaint filed by plaintiff, so far as material to any question involved, were to the effect that it owned the Larimer and Weld reservoir in which it stored water for the purposes of irrigation; that its stockholders owned lands lying under The Larimer & Weld Irrigation Company canal, and were entitled to water from the reservoir, with which to irrigate their lands; that water turned from the reservoir entered this canal; that by contract it had acquired the right to run its stored water through this canal; that neither The Larimer & Weld Irrigation Company nor the defendants had any interest in the reservoir whatever, or the water stored therein; that while engaged in running water from its reservoir through the canal for distribution to its stockholders, defendants, acting in concert, had raised certain headgates along the canal, and diverted the reservoir water flowing therein, to the volume of about twenty cubic feet per second of time, and were taking such water against the protest of plaintiff and its stockholders, and applying it to their own use. The issues thus tendered were found in favor of the

plaintiff, and the judgment of which the defendants complain entered.

Clearly this judgment was correct, for the obvious reason that the testimony establishes that defendants were taking water belonging to the plaintiff and its stockholders, in which they, the defendants, had no right whatever, unless for some reason urged upon our attention, and not so far disclosed from the facts above narrated, as found by the court, based on the allegations of the complaint, it is erroneous.

The defendants demurred to the complaint upon the ground that plaintiff had no legal capacity to sue, and that there was a defect and nonjoinder of parties plaintiff. This demurrer was overruled, and the same question was sought to be raised by answer, by alleging that The Larimer & Weld Irrigation Company was a necessary party, without whose presence a complete determination of the controversy and an adjudication of the rights of the parties in the subject-matter thereof, could not be had. The court disregarded this plea. It is urged that it should have been sustained for the reason that the defendants were not parties to the contract between the reservoir and irrigation companies, whereby the former acquired the right to conduct its water through the canal of the latter. It appears from the averments of the complaint, is undisputed by the testimony, and was found by the court, that the irrigation company had no interest in the reservoir water whatever. It was carried through the canal of the irrigation company, under a contract between the two companies. The sole question was, whether the plaintiff or the defendants owned the reservoir water, which the defendants were diverting from the canal; hence, the controversy was narrowed to one between the plaintiff and defendants; did not concern any other party, and when that was settled between them the rights

in the subject-matter of controversy were completely adjudicated as between them. Consequently, the presence of the irrigation company as a party was not required. Clearly those who have no interest in the subject-matter of controversy involved in an action are neither proper nor necessary parties thereto.

It is also urged on behalf of defendants that the decree discloses the necessity for the presence of the irrigation company. This contention is based upon the provision in the decree to the effect that the defendants are enjoined from interfering with the headgates of the irrigation company, except upon the consent or order of the superintendent of the latter, and from in any manner interfering with him in the discharge of his duties during such times as there is a flow of water in the canal of the irrigation company from plaintiff's reservoir.

The decree is not objectionable. Its purpose was to prevent the defendants from diverting the water of plaintiff company from the canal, when it was being conducted by means of that channel. From the evidence it appears that under the contract between the reservoir and irrigation companies the superintendent of the latter was to distribute the water turned into the canal by the former company. For these services the reservoir company paid the irrigation company, so that when its superintendent was engaged in distributing the water of the reservoir company he was acting for it, and it was eminently proper to enjoin defendants from interfering with him in the discharge of such duties. There was no controversy between the two companies with respect to these matters.

A general demurrer to the complaint was also interposed and overruled. The many reasons advanced in support of the claim that the demurrer

should have been sustained, when summarized, are simply to the effect that the complaint does not state facts from which it appears that it has acquired any priority to divert and store waters for irrigation purposes. As sustaining this proposition, *Farmers' High Line C. & R. Co. v. Southworth,* 13 Colo. 111; *Church v. Stillwell,* 12 Col. App. 43; and *Farmers' Independent Ditch Co. v. Agricultural Ditch Co.,* 3 Col. App. 255, are cited; in which cases it was held that a complaint which merely alleges a priority of an appropriation of water from a natural stream, without alleging the facts showing such prior appropriation, states a conclusion of law only and upon demurrer is fatally defective. The question of priority is not involved in the case at bar. Its purpose was to restrain the defendants from diverting water belonging to, or under the control of, the plaintiff, from the canal through which it was being conducted to its stockholders. The important ultimate question presented was, did the defendants have any right to this water? No question of priority of appropriation as between the parties was involved, and hence the authorities cited are not in point.

All the defendants except Bushnell interposed a joint answer, in which, as a second defense, they allege that under certain agreements known as the Eaton contracts, dated April 24, 1878, they and their predecessors, from the date of such contracts, had acquired and enjoyed the undisputed right and use of sufficient water from the canal of the irrigation company to irrigate their lands; and also under such contracts were entitled to the exclusive control of their headgates placed in such canal. In support of this assertion they alleged, in substance, that April 24, 1878, they (the defendants) and their predecessors in interest were the owners of a ditch known as Irrigation Ditch No. 10, taking its supply of water

from the Cache la Poudre river; that at this time Benjamin H. Eaton was engaged in constructing what was afterwards known as The Larimer & Weld Irrigation Company canal; that they entered into contracts with Eaton whereby they agreed to, and did, sell to him their right, title and interest in ditch No. 10, in consideration of which Eaton covenanted and agreed that they, their heirs and assigns, should have the perpetual right and privilege to take from the ditch he was constructing a sufficient quantity of water to irrigate their lands lying thereunder; that by virtue of these contracts he acquired the right of way and appropriations and priorities to use the water belonging to ditch No. 10, and merged the same into the canal of the irrigation company; that they have since diverted from the latter conduit, and applied to their lands, the water to which they were entitled by virtue of their contracts with Eaton, and that afterwards he sold to The Larimer & Weld Irrigation Company the canal by him constructed, subject to the provisions and terms of their contracts.

As a third defense these defendants alleged that the plaintiff company was organized by the stockholders and officers of The Larimer & Weld Irrigation Company, with the object of acquiring the right to carry the reservoir water through the canal of the irrigation company; that the plaintiff company acquired their rights with full knowledge that they were subject to the rights of the defendants, vested in them by virtue of the contracts set out in the second defense. They further allege that the reservoir water turned into the canal had been commingled with that to which they were entitled, in such manner as to render it impossible to determine what proportion was reservoir water, and what proportion might lawfully be claimed by them; that the right of plaintiff to use the canal of the irrigation company as a

conduit was acquired in 1891; that since such date they, the defendants, have enjoyed the free and uninterrupted use of water from the canal with the knowledge of plaintiff, and without let or hindrance upon its part, and that by reason thereof the defendants and their predecessors have expended large sums of money in keeping their respective headgates in repair, maintaining their laterals, and in the application of water to their lands, whereby the equity of plaintiff, if it had any, has become stale; and that there has accrued to the defendants a prescriptive right to use of sufficient water from the canal to irrigate their lands.

By the fourth defense it was stated that in an action between The Colorado Milling & Elevator Company and The Larimer & Weld Irrigation Company, in which it was sought to adjudicate the rights of these parties to the use of water from the common source of supply, as well as the original owners of ditch No. 10, and their successors in interest, the irrigation company, it was alleged in the answer of the latter that the volume of water necessary to irrigate the lands of the original owners of ditch No. 10 and their successors, was more than nineteen and two-thirds cubic feet per second of time.

The second and third defenses of the defendant Bushnell, who filed a separate answer, are along the same lines as the second and third defenses of his codefendants. By his fourth defense he sought to interpose the defense of *res judicata* upon allegations to the effect that in an action wherein he was plaintiff, and The Larimer & Weld Irrigation Company was defendant, in which was involved the question of whether or not he had a perpetual right to the use of water from the canal of the latter (Bushnell claiming he had, under one of the Eaton contracts), it was held that he had, and a decree entered accordingly. It is

further alleged that the plaintiff company had knowledge of that action, and failed to intervene.

To each of these defenses demurrers were interposed and sustained. The defendants have assigned this as error. The judgment of the trial court in sustaining the demurrers was right, for the simple reason that neither of the defenses stated facts from which it appeared that the defendants had any interest in the reservoir water. Whatever rights they acquired under the Eaton contracts were limited to water belonging to ·The Larimer & Weld Irrigation Company. It does not appear from either of the defenses that this company had any interest in the reservoir water. The fact that the waters of the reservoir and canal companies might have been commingled, as alleged, gave the defendants no right to divert water which did not belong to them. It was the duty of the irrigation company, as stated by the trial judge in finally disposing of the case, to put in measuring weirs, so that the water flowing in the canal, when commingled, could be properly distributed; but the failure of the irrigation company to discharge its duty in this respect did not invest the defendants with the right to take water which did not belong to them. No facts were alleged from which it would appear that by the lapse of time the defendants had acquired any prescriptive right to the use of reservoir water, for the reason that it nowhere appears that they had diverted water belonging to the reservoir company. True, they say they have diverted water from the canal without let or hindrance on the part of the plaintiff company, but they do not charge that the water so diverted was the water of that company.

We are at a loss to understand how the answer of the irrigation company set out in the fourth defense of the joint answer of the defendants had any

bearing whatever on the issues between the parties. The volume of water necessary to irrigate the lands of the defendants was not involved; and, aside from this suggestion, how could the averments in an answer of the irrigation company in an action in which plaintiff company was not a party, affect the rights of the plaintiff? The fourth defense of the defendant Bushnell merely stated that there had been an action between himself and the irrigation company, which involved his right to a perpetual use of the water from the canal of that company. The plaintiff company was not a party to this suit, nor was it under any obligation to intervene, although it may have had knowledge of its pendency. Bushnell's claim was not asserted to any water other than that which belonged to the irrigation company. The judgment in his case fixed no rights to the reservoir water. That was not involved.

It appears from the testimony that in 1862 several pioneer ranchmen settled on lands adjacent to the Cache la Poudre river, and diverted water from that stream through a ditch for the irrigation of their lands. This is the ditch heretofore referred to as ditch No. 10. About 1878 the late Governor Eaton was engaged in constructing a canal which would also draw its supply of water from the Cache la Poudre river. He entered into contracts with the then owners of ditch No. 10, whereby he acquired the latter, and its priorities, in consideration of which he agreed that his vendors, their heirs and assigns should have the perpetual right to take from ditch No. 10 sufficient water to irrigate their lands. These are the contracts heretofore referred to, and defendants are either parties thereto, or have succeeded to the rights thereby granted. The purchaser of ditch No. 10 enlarged and merged it into the one he was then constructing. Later he sold the canal as en-

larged to The Larimer & Weld Irrigation Company. It is claimed that the decree deprives the defendants of valuable rights acquired by virtue of the Eaton contracts. The several reasons urged in support of this contention, under several different heads, in the briefs of counsel, go to the one proposition, that the decree repudiates, annuls, and divests the defendants of, their rights under these contracts.

No question of that character is involved. The contracts gave no right whatever to water in the canal of the irrigation company except such as belonged to it. In the reservoir water it had no interest, and the judgment rendered simply enjoins the defendants from taking or interfering with the distribution of water belonging to, or under the control of, the plaintiff company, an entirely independent organization, neither party nor privy to the contracts.

It is urged that the decree is erroneous for the reason that it appears that at the time the acts complained of were committed there was commingled in the canal of the irrigation company, with reservoir water, other waters belonging to the appropriations of the irrigation company, to which the defendants were entitled. Whatever the record may disclose in this respect is immaterial. The commingling of the two classes of water did not give the defendants any right to divert water in which they had no interest. In this connection it is urged that the contract between the two companies, and condemnation proceedings which appear to have been had whereby the reservoir company secured the right to transport its water through the canal of the irrigation company, were of no binding force upon the defendants, because they were not parties thereto, and that thereby they were deprived of a vested right to carry their water through the canal. It is unnecessary to deter-

mine this question.   It is not claimed that the use of the canal by the reservoir company, at the time the defendants were diverting its water, deprived them of carrying water to which they were entitled.   It will be time enough to determine that question when, under material facts, it is presented for adjudica- tion.   The defendants cannot complain of any use of the canal granted by its owner or acquired by operation of law which does not interfere with their rights.

It is also urged that the plaintiff company was not entitled to relief, for the reason that it did not come into court with clean hands.   Under this head, we shall only consider one of the many propositions presented by counsel as supporting it, as all others have been disposed of in considering previous ques- tions.   It is claimed that, so far as disclosed by the evidence, there may have been in the river at the time defendants committed the acts complained of, a large volume of water pertaining to the appropria- tions of the irrigation company.   Suppose there was; that did not entitle the defendants to take water which did not belong to them.   The reservoir com- pany was under no obligation, neither had it the right, to meddle with the appropriations belonging to the irrigation company.   If the latter was not dis- charging its duty to the consumers under its canal, that did not authorize the defendants to commit a wrong against the plaintiff.

Many other propositions are urged upon our attention by counsel for defendants which it is not necessary to consider in detail.   They have already been covered by what has been said, or relate to matters not involved, or to the reception of testimony which, whether relevant or not, did not prejudice the rights of the defendants, or a refusal to find on issues claimed to have been presented by the testimony,

which were not material, or to findings of fact, whether correct or incorrect, which did not prejudice the defendants on the real question involved. That question, in a nut shell, was, to whom did the reservoir water belong? It unequivocally appears that it belonged to the plaintiff, and that the defendants had no interest therein whatever. The judgment of the district court in so determining, and providing for the protection of plaintiff's rights as against the claims and acts of the defendants, will, therefore, stand affirmed.                    *Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE BAILEY concur.