[No. 7562]

## GREELEY & LOVELAND IRRIGATION COMPANY v. FARMERS PAWNEE DITCH COMPANY.

1. WATER RIGHTS. *Storing Water Without Appropriation for Storage.* The senior appropriator whose only right is for direct irrigation may not store flood water, even temporarily, when it is needed by a junior appropriator below him, and this even though his ditch is temporarily in such condition that to turn the flood water into it would have caused it to break and overflow. (464, 465)

2. PLEADINGS. *Sufficiency.* Complaint for the wrongful detention of flood water to which the plaintiff was entitled need not aver that, if not interrupted, the flood would have reached plaintiff, or would have been available to him. Injury to the plaintiff will be presumed, in the first instance, and the burden is upon defendant to allege and prove the contrary. (465)

3. ——*Answer—Defense Not Pleaded,* evidence of will not be considered in the court of review. (466)

4. EVIDENCE—*Burden of Proof.* One who defends an action for a tort upon the ground that no injury resulted to his adversary has the burden of proof. (465)

5. VENUE—*Petition for Change—Waiver.* Defendant answering and going to trial on the merits waives any error committed in denying his application for a change of the venue. (466)

6. APPEAL AND ERROR—*Errors not Assigned,* will not be considered. (466)

*Error to Logan District Court.*—Hon. H. P. BURKE, Judge.

Mr. L. R. RHODES, and Mr. C. D. TODD, for plaintiffs in error.

Messrs. ALLEN & WEBSTER, and Messrs. STEPHENSON & STEPHENSON, for defendant in error.

Mr. JUSTICE GABBERT delivered the opinion of the court:

On the merits, the question involved is whether the Greeley and Loveland Irrigation Company wrongfully impounded and held in its reservoir water which should have been permitted to flow down the stream, from which it was diverted, to supply the priorities of defendant in error. The latter brought an action against the irrigation company and certain water officials, the purpose of which was to compel the return of the stored water to the stream, and to restrain the commission of such alleged wrongful acts in the future. The judgment was in favor of plaintiff, and defendants have brought the case here for review on error.

Briefly, the facts presenting the merits of the controversy are as follows: The irrigation system of the defendant company is located on the Big Thompson, a tributary of the South Platte, in Water District No. 4. The plaintiff owns an irrigation system on the South Platte in Water District No. 64. Each has decreed priorities for direct irrigation. The headgate of the plaintiff company is about 175 miles below the headgate of the defendant company. On the afternoon of June 21, 1911, a heavy rain storm occurred on the Big Thompson, above the intake of the canal of the defendant company, which caused a great volume of water to flow down the stream. The defendant company has a decreed priority for direct irrigation for 297 feet, as of date April 1, 1881. Previous to the storm it had been receiving 133 feet of water, which it was then utilizing by checks in its ditch, so as to cause the water to flow in the various laterals supplied through that channel. This volume of water represented priorities which were in advance of the one dated April 1, 1881. To turn the appropriation of 297 feet into the ditch, with the checks set, would

have caused it to break and overflow. Under these conditions, with the consent of the Water Commissioner in Water District No. 4, which embraces the Big Thompson, the defendant company diverted and stored in its reservoir some ten or twelve million cubic feet of water from the flood waters caused by the storm to which we have referred. The object of storing this water was to provide a supply for use later in the season. At this time the defendant company did not have a decree for storage purposes. The plaintiff has a decreed priority for direct irrigation for 150 feet per second, as of date June 22, 1882, and diverts the water to which it is thus entitled in Water District No. 64. It also has other priorities. At the time of the storm and during the period the defendant company was storing the flood water, there was not sufficient flowing in the stream at the headgate of plaintiff's ditch to supply its decreed priorities which were then needed by its consumers.

In this jurisdiction priority of appropriation for a beneficial use has always been recognized as the foundation upon which water rights depend. When the diversion of the flood waters occurred, both corporate parties were entitled to divert water from the stream for direct irrigation, and for immediate application to lands, to the extent their priorities were needed, and could be lawfully supplied; but there was not sufficient water flowing at the headgate of plaintiff to supply those it had been awarded, and were then required to irrigate lands under its system. The right of defendant company was senior to plaintiff, but it did not have any right to divert water for storage to the detriment of plaintiff. In other words, its right was limited to a diversion of water for direct irrigation, to be at once applied to lands under its system, consequently it was without right to divert and store such waters, when by so doing the plaintiff company

was deprived of water to which it was entitled for direct irrigation. Nor does the fact that the physical condition of the ditch of the defendant company at the time of the flood was such that the volume of its priority could not be utilized by turning it into that channel change the situation. The right of the defendant to store water must be measured by its right to divert water for this purpose at the time it did, and not by the physical condition of its ditch.

On behalf of the defendant company it is contended that the complaint fails to state a cause of action, because it is not alleged that had the flood water not been intercepted by storage it would have reached the headgate of the plaintiff. It is also claimed the testimony fails to establish that had this water not been diverted it would have been available for the use of plaintiff, and hence the judgment is contrary to the law and the evidence. These propositions can be considered together. The water involved did not belong in specie to the plaintiff, but when it appears as it does, from the allegations of the complaint and proof, that it has a decreed priority to the use of water from the stream, the flow of which would presumably be augmented by the flood water diverted, and at the time of such diversion was in need of water to supply its priorities, it will be presumed that the volume in the stream was depleted to its injury as the result of the wrongful diversion by the defendant company. So that instead of plaintiff being required to allege and and prove such facts it was incumbent upon the defendant company to allege and prove them in order to excuse its wrongful act.—*Peterson v. Payne*, 43 Colo. 184, 95 Pac. 301; *Alamosa Creek C. Co. v. Nelson*, 42 Colo. 140, 148, 93 Pac. 1112.

In this connection we notice the claim on the part of defendant company that the testimony established that

the water diverted could not have reached the headgate of the plaintiff. The defendant company did not interpose any defense presenting this issue.

The defendants filed a motion to change the place of trial to the. District Court of Larimer County, based upon the ground that the action was in tort, which according to the allegations of the complaint was committed in that county. The motion was overruled and error is assigned on this ruling. After the motion was denied the defendants answered and went to trial on the merits. This precludes them from questioning the order of the trial court in denying the motion to change the place of trial.—*O'Rourke v. O'Rourke, ante,* 300, 144 Pac. 890.

The remaining question urged on behalf of the defendant is not covered by any assignment of error.

The judgment of the District Court is affirmed.

*Judgment affirmed.*

Decision *en banc.*

Mr. JUSTICE HILL concurs in the conclusion.

Mr. JUSTICE WHITE, and Mr. JUSTICE GARRIGUES dissent.

Mr. JUSTICE GARRIGUES dissenting.

I cannot agree with the majority opinion.

1. The South Platte river and tributaries constitute water division No. 1. Water District No. 2 begins at the mouth of Cherry Creek on the South Platte river and extends to the mouth of the Cache la Poudre. Water District No. 1 begins at the mouth of the Poudre and extends to the east line of Morgan county. Water District No.

64 begins at the east line of Morgan county and extends to the Colorado and Nebraska state line. The Big Thompson river—Water District No. 4, empties into the Platte in water district No. 2. The Greeley and Loveland Irrigation Company owns an irrigating system in Larimer county, supplied by the Big Thompson river in Water District No. 4, consisting of the Greeley and Loveland canal, a reservoir called Lake Loveland, the Barnes ditch used as an inlet from the river to fill the reservoir, and an outlet ditch to the canal. The headgate of the canal is about 26 miles above the junction of the Thompson with the Platte. The canal has a decreed priority of appropriation for irrigation, dating April 1, 1881 for 297.44 cubic feet per second. In irrigation, the water is either diverted directly from the river into the canal headgate or drawn from Lake Loveland through a short outlet from the reservoir into the canal. By means of this system, water can be diverted from the river into the canal either through the Barnes ditch and Lake Loveland, or directly into the canal from the river, without passing through the Barnes ditch and the reservoir.

The Farmers Pawnee Ditch Company owns an irrigating canal having a decreed priority of appropriation for irrigation of 150 cubic feet per second from the South Platte river in Water District No. 64, of date June 22, 1882. The headgate of this canal is about 175 miles on the Platte below the headgate of the Greeley and Loveland canal on the Thompson. The afternoon of June 21, 1911, when both canals were needing all their decreed rights for direct irrigation, there occurred on the water shed of the Big Thompson a rain storm of unusual violence called a cloudburst, which greatly swelled the stream and flooded the country to such an extent that many of the ditches on the Big Thompson were flooded and broken, or their headgates washed out, so that they

were unable to draw water. This caused an unusual spurt or flood of water to come down the stream between six and seven o'clock that evening, which lasted only throughout the night, and the next day the water in the stream was normal. Under these conditions the Water Commissioner on the Thompson—defendant Kelley— authorized and permitted the Greeley and Loveland canal to take and divert from the river, through the Barnes ditch, and run into the reservoir, during the flood, 200 cubic feet per second for about twelve hours, amounting to 10,500,000 cubic feet of stored water. July 26, 1911, the Pawnee Company, defendant in error, brought this action at Sterling in Logan county in the Thirteenth Judicial District, against the Greeley and Loveland Irrigation Company, Charles W. Comstock as State Engineer, Filmore Cogswell as Division Engineer, and H. H. Kelley as Water Commissioner of Water District No. 4, in which it alleged it owned and was entitled on its irrigation priority of June 22, 1882, to the water in the stream which the defendant company stored in the reservoir through the Barnes ditch on the night of the flood; that the irrigation company wrongfully stored the water when plaintiff needed it for direct irrigation, and asked for a mandatory injunction commanding the irrigation company to draw the stored water from the reservoir and redeliver it into the Big Thompson river for the use of plaintiff, and that the official defendants see, as police officers of the stream, that it is conveyed to plaintiff's headgate for its use, and for a permanent injunction restraining the irrigation company thereafter from ever diverting, for storage, water from the Thompson, when there is not enough flowing in the South Platte river opposite plaintiffs headgate to supply its decreed priority for irrigation. August 3, 1911, defendant filed a petition for a change of the place of trial as follows:

"Come now the defendants and move the court to change the place of trial of said action from the District Court of Logan County to the District Court of Larimer County, Colorado, and for grounds for said motion say:

That the county designated in the complaint is not the proper county for the trial of said action, and that the same should be changed to the District Court of Larimer County, for that it appears from the complaint herein that the cause of action arose in Larimer County, that the subject matter of the action is properly located in Larimer County. That it further appears from the complaint that the cause of action and the relief prayed is of and concerning property in Larimer County. That defendants and none of them are residents of Logan County. That none of the defendants were served in Logan County. That the defendant H. H. Kelley is a resident of Larimer County and was served with summons in Larimer County, all of which appears from the complaint, returns of service and the affidavit hereto annexed."

The application was denied, and defendant filed an answer in which it admitted storing the water, and alleged the irrigation company was in need of, and entitled to divert all the water of its decreed priorities for irrigation; that the checks in its canal, when the flood came suddenly, were arranged to carry and distribute 133 feet to its consumers which, owing to the low stage in the stream was all the water it was able to obtain; that on account of the suddenness of the flood, its short duration, and time of night when it occurred, it was not practical to arrange or rearrange the checks in the canal in time to economically and properly distribute from the canal the additional water to which it was entitled, and for the purpose of conserving and utilizing the water to which it was entitled, and needed,

it diverted, while the flood lasted, through the Barnes ditch, into the reservoir, with the permission and under the authority of defendant Kelley as Water Commissioner, 200 feet per second of its decreed priority, for about 12 hours to be used shortly thereafter by it for irrigation. These are facts regarding which there is no dispute. The court entered a decree restraining the Greeley and Loveland Irrigation Company until August 15, 1911 from discharging this water from the reservoir, and commanding it on that date to discharge the water from the reservoir into the river, where it should be permitted by the official defendants, to flow down the streams to the headgate of plaintiff's ditch for the use of plaintiff.

2. Plaintiff's priority dated June 22, 1882. The Greeley and Loveland Irrigation Company has eight priorities aggregating 445.44 cubic feet per second. The first seven of these aggregate 148 feet and date from 1865 to 1878. The eighth priority is for 297.44 cubic feet and dates April 1, 1881, so that the last priority of defendant is one year two months and twenty-one days senior to the earliest priority of plaintiff. All the priorities of the defendant company are senior to any priority of plaintiff. Defendant was entitled to divert 445.44 cubic feet when it could get it and needed it, before plaintiff was entitled to divert any. If all the decrees in all the Water Districts of division No. 1 should be enforced as a whole, or as one decree, all defendant's priorities in district No. 4 on the Thompson would be senior, and would have to be supplied prior to, any appropriation of plaintiff in district 64, on the Platte. The low stage of the river made it impossible for defendants to divert more than 133 feet on its decree. It demanded and needed and would have taken all its water, but could not get more, because it was not in the stream. The tem-

porary checks in the canal were arranged to distribute and the lateral headgates set to receive this 133 feet, not because they did not need all the appropriation, but because it was all they could get. Both canals were needing and would have used their full appropriations if they could have been obtained. Plaintiff contends that notwithstanding the seniority of the decreed priorities of the Greeley and Loveland canal, and the need of its consumers for all the water, and its prior right to divert the water for irrigation, still defendant had no right to run the water, even temporarily into a reservoir and store it there, to be shortly thereafter used, at a time when plaintiff was needing it for direct irrigation.

The question presented is, was the Greeley and Loveland canal lawfully entitled on its decreed priority of April 1, 1881 as against plaintiff's decreed priority of June 22, 1882 to divert this water from the stream when needed by its consumers for irrigation? If so, then defendant had a right to divert it when needed by its consumers for irrigation, which right was limited to the time and in the volume which it was entitled under the decree to divert for irrigation. The fact that it chose to temporarily store in a reservoir, to better conserve the use of the water for irrigation, was no injury to plaintiff, and deprived plaintiff of no vested right of seniority it had in and to the water as against defendant. As between these irrigating canals, the Greeley and Loveland was entitled to the water because of its prior decreed right for irrigation, and it could have raised its headgate and ran all the water into its canal if it chose, and plaintiff could and would not have made any complaint. The complaint is, that instead of running it into the canal, as it had a right to do, it ran it into the reservoir, which it had no right to do. Because it preferred from the standpoint of expectancy, to store temporarily in the

reservoir, the water it needed and could have taken and was entitled to, affords no ground of complaint on the part of plaintiff. Defendant's consumers were suffering for this water, and because they thought they would derive more good, or could make a better economical use out of the water, by storing rather than running it into the canal that night, is no concern of plaintiff, because it deprived plaintiff of nothing to which it was entitled. The water was not run into the reservoir in an amount, or at a time when defendant had not the right to divert it for irrigation. Plaintiff admits defendant had the right to divert the water from the stream, but contends it had no right to put it in the reservoir. Because defendant believed it would derive more benefit from the water to run it into the reservoir, and conserve it to a greater economical use in the irrigation of crops, is no concern of plaintiff, and no argument against its right to divert the water from the stream.—*Irrigation Co. v. Reservoir Co.*, 25 Colo. 144, 53 Pac. 318, 71 Am. St. Rep. 123; *Colorado M. & E. Co. v. Irrigation Co.*, 26 Colo. 47, 56 Pac. 185; *Seven Lakes Co. v. Irrigation Co.*, 40 Colo. 382, 93 Pac. 485, 17 L. R. A. (N. S.) 329.

In *Cache la Poudre Irrigation Company v. Larimer and Weld Reservoir Company*, 25 Colo. 144, 53 Pac. 318, 71 Am. St. Rep. 123, the Dry Creek Ditch Company, a mutual corporation, owned the Jackson ditch, which irrigated land north of the river and northwest of Fort Collins, and the Larimer and Weld Reservoir Company owned a reservoir called Terry Lake. The Reservoir Company bought stock in the Dry Creek Ditch Company, and ran the water represented by the stock through the Jackson ditch, thence down Dry Creek, from which it was diverted and stored in the reservoir. In the late irrigation season it drew the water from the reservoir into the Eaton canal, and distributed it to its consumers

around Eaton in Weld county. The lower court enjoined this use of the water. We reversed the judgment and sanctioned and upheld the storage as lawful. True, the question there was over an enlarged use, and the right to store was not directly involved, but the court recognized the right and never questioned it.

In *Colorado Milling and Elevator Co. v. The Larimer and Weld Irrigation Co.*, 26 Colo. 47, 56 Pac. 185, the Milling Company owned a flouring mill at Fort Collins on the banks of the Poudre river, operated by water power through a mill race from the stream. The Irrigation Company's canal—the Eaton canal—had a decree for irrigation, senior to the decree of the mill race for power. The headgate of the canal was above the headgate of the mill race. During the summer the mill race had no difficulty in obtaining sufficient water, for the reason that irrigation priorities below the mill race were in part senior to the Eaton canal. In the winter time it required all the water of the stream to supply the mill with power. Things ran along this way without any serious trouble until the Irrigation Company built a large reservoir on the plains, called the Windsor reservoir, and began storing water during the winter season when there was no irrigation, diverting it through the Eaton canal on its irrigation decree, which antedated the decree of the mill race, which prevented the mill from operating by water power. The question involved was whether the Irrigation Company by diverting the water in the winter time for storage had so changed the use decreed the canal for irrigation as to injuriously affect the right decreed the mill race for power. There was no question but what during the summer irrigation season, the Eaton canal had the senior right. The lower court held that because the general decree of the canal for irrigation was senior to the mill race decree for power,

that the canal could divert and store the water during the winter season at a time when it was not needing or using it for irrigation. The opinion reversing the case was written by Mr. Justice Gabbert, in which the court said the Irrigation Company could not make any use of the water which would result in a diversion in excess of the volume decreed the canal, or at a time when the water was not needed for the use for which it was appropriated; that a new question arose for determination upon the evidence respecting the time and use of the appropriation; that though the right of the canal to divert for irrigation was settled by the decree, it could not change the exercise of the right, measured either by volume or time, in such a manner as to deprive the mill race of its priority "or, otherwise expressed, if the rights of the parties alone depended upon the decree, then, although the Irrigation Company could change the use of its appropriation from irrigation to that of storage, it could not divert water for that purpose, which would result in a diversion measured by either volume or time, to the damage of plaintiff (the Milling Company), but when the water of the stream was needed by plaintiff to supply its appropriation, defendant (the Irrigation Company) would be limited to a diversion for storage, at such time and under the same conditions which would permit it to divert for irrigation purposes; for unless so limited, it could divert for storage to the injury of the priority of plaintiff, which, though junior to that of the irrigation company, is entitled to be protected against any use by the irrigation company which would result in depriving it of the use of water different from that following a diversion by the irrigation company for irrigation purposes." While the exact question of the right of the Irrigation Company to store temporarily the water in an amount and at a time when it would be entitled to divert

it for irrigation, was not directly involved, still the case in effect holds that while the Irrigation Company could not store the water in the winter time, on the irrigation decree, still it could store the water during the summer or irrigation season for irrigation, limited in conditions to the volume and during the time it would be permitted to divert the water for irrigation.

It was not until the case of the *Seven Lakes Reservoir Co. v. The New Loveland and Greeley Irrigation and Land Co.,* 40 Colo. 382, 93 Pac. 485, 17 L. R. A. (N. S.) 329 that the question was squarely presented before the court. This case is important also because two of the same ditches, the Greeley and Loveland canal and the Barnes ditch, are involved. Burton D. Sanborn organized the Seven Lakes Company, which constructed and owned the Seven Lakes reservoir. The ranches including the site of the Seven Lakes, were farm lands, irrigated from the Louden and Barnes ditches. In purchasing these sites and adjoining lands for the reservoir, the company bought the water which had been used for their irrigation, from the Louden and Barnes ditches, and ceased to use the water upon these lands; stored it in the Seven Lakes reservoir during the flood time or earlier part of the irrigation season, for use in the latter part of the irrigating season. The water was drawn from the reservoir and conveyed by an outlet into the Greeley and Loveland canal, and distributed to its consumers and used for the irrigation of rowed crops such as beets, potatoes, beans and corn. The precise and only question involved was the right to store for later irrigation use, in the reservoir, priorities decreed to the Barnes and Louden ditches, during the irrigating season, at a time when the water was needed for direct irrigation. The right is upheld in an opinion written by Mr. Justice Gabbert, wherein the court said:

"Appellant, (Seven Lakes Reservoir Company) owns certain rights to the use of water which, prior to its purchase, had been directly applied to the irrigation of lands. Instead of continuing to so use this water, it has ceased its direct application during the period it was theretofore applied, and stores the water, which it would have the right to thus apply, for use later in the same season. This change is in no manner detrimental to the rights of the appellee. It is not thereby deprived of any water which it would have the right to divert and apply to lands during the irrigating season as against the rights of the appellant. By the change no greater burden is imposed upon the common source of supply of the respective ditches. It must therefore, logically follow, that the appellant is entitled to divert the water represented by its purchase, and store for use later in irrigating crops, measured by volume and time, which it would have the right to apply directly to lands for purposes of irrigation at the time of such diversion. * * * Appellant is not asserting any right to the water in controversy by virtue of any appropriation for reservoir purposes, but is merely seeking to utilize priorities which it is conceded it is entitled to for direct irrigation purposes by storing the volume to which it is thus entitled for use at a later period. We are of the opinion that the appellant is entitled to so utilize these priorities; that is to say, entitled to store, during the direct irrigation season, the quantity of water, measured by volume and time, which it would be entitled to divert during that period for the purpose of direct irrigation."

The cases are as much alike as two peas, and yet the majority opinion of the court written by the same judge, never even mentions it.

3.   The Greeley and Loveland Irrigation Company learning that certain state water officials in Denver

threatened to draw the disputed water from the reservoir back into the stream, brought an action at Fort Collins, in the District Court of Larimer county against Comstock as State Engineer, Cogswell as Division Engineer, and Kelley as district Water Commissioner, to enjoin and restrain them from committing the act threatened. Thereupon the State and Division Engineers informed the court that the impounded water was claimed by canals down the river in Water District No. 1, in whose behalf they were acting in threatening to turn the water out, and whose priorities were senior to the Greeley and Loveland canal; and, at their suggestion, the court ordered that the adjudicated ditches of Water District No. 1, be made parties, which was accordingly done. Upon issue joined, the state water officials and the ditches in district No. 1, being defendants on one side of the controversy and the Greeley and Loveland Irrigation Company, plaintiff, on the other, the cause was tried to the court. It found in favor of the Greeley and Loveland Irrigation Company; that it had rightfully stored the water in dispute, and was the owner thereof, and July 19, 1911, it entered a final decree forbidding, enjoining and restraining the official defendants from in any manner interfering with the disputed water in the reservoir, or from turning any of the water stored therein from the reservoir. A week later, July 29th, the Pawnee Company, whose ditch lies in water district No. 64, lower down the stream, instituted this suit at Sterling, in the District Court of Logan county. The answer of the Greeley and Loveland Irrigation Company pleaded the fact of the former suit at Fort Collins as a defense; and the records, pleadings, evidence and decree in the former suit were introduced in evidence. The only difference in the two suits was the transposition of parties, and this was immaterial; the water users in water district No. 64,

taking the place of the water users in water district No. 1. The entire proceedings in the former suit were brought before the court, showing that the transaction complained of, subject matter, issues joined and relief sought in both cases were identical. Notwithstanding this, the court entered a mandatory decree, diametrically opposed to the former decree of the District Court of Larimer county, commanding that the disputed water be discharged from the reservoir into the Big Thompson river, and permitted by the official defendants to flow down the stream to plaintiff's headgate for its use. This presents the anomalous position of the District Court of the Thirteenth Judicial District commanding the state officials to do a thing which the District Court of the Eighth Judicial District forbade them doing. The suit was brought apparently upon the theory, that the Pawnee Company not being a party to the former action, the doctrine of *res judicata* did not apply. That may be true. It was not pleaded for that purpose. Nobody claims it was *res judicata*. It was to show the abuse of jurisdiction by the District Court at Sterling in entertaining the case at all. The identity of the actions was such that it was an abuse of discretion for the District Court of Logan county to entertain jurisdiction and enter a decree commanding the doing of the identical thing which the District Court of Larimer county had forgotten. A *nisi prius* court should not disregard the former decree of a court of concurrent jurisdiction, in an action where the issues are identical and adjudicate over again the same transaction, involving the identical subject matter and relief, and enter a conflicting decree. This is especially true in injunction in mandamus. The mandatory writ of injunction in this case performed the duties of a writ of mandamus and it was in effect such a writ. In High on Extraordinary Remedies, at section 23, it is said:

"The rule is well established that the writ will not be granted to compel the performance of an act which has been expressly forbidden by an injunction in the same court or in another court of competent jurisdiction, or whose performance would be in direct violation of an existing injunction, even though the person seeking relief by mandamus is not a party to the injunction suit. Courts will not compel parties to perform acts which would subject them to punishment, or which would put them in conflict with the order or writ of another court, nor will the court in such cases, to which application is made for a mandamus, inquire into the propriety of the injunction. And when it appears by the record that the respondent is already enjoined in the same court from performing the act sought, and the injunction suit will determine the question involved, a mandamus will not be granted." By the decree in the former suit, the water officials were enjoined from in any manner interfering with this impounded water; by the mandatory writ of the District Court of Logan county, they were commanded to do the act formerly forbidden. The former decree forbade activity, the latter commanded it in performing the act forbidden. When the court's attention was called to the proceedings and decree entered in the District Court of Larimer county, it should have declined to entertain jurisdiction, and not so to do was an abuse of discretion.

4. The petition to change the place of trial to Larimer County should have been granted. Chapter 2, concerning the place of trial of civil actions, Code 1887, was amended in 1905, by adding the following section:

"Sec. 25A. All actions affecting property, franchises or utilities, whether by foreclosures, appointment of receivers, or otherwise, shall be tried in the county where such property, franchise or utility is situated, or

in the county where the greater part thereof is situated. And it shall be the duty of the court, upon application of any party to the action or interested in the subject matter at once to transfer any case to the county in which such property, franchise or utility is situated. After the application is made, the court shall have no jurisdiction, except for the purpose of entering the order of transfer.''

Session Laws 1905, 166.

This section provides that all actions affecting property whether by foreclosure, appointment of receivers or otherwise, shall be tried in the county where it or the greater part thereof is situated. A priority of appropriation to divert water flowing in a natural stream has been declared by us to be one of the most valuable property rights known to the law, and surely water that has been captured over night, and stored in a reservoir to be used shortly after, for irrigation, is at least of equal dignity. The reservoir, including the water stored therein, was property. The complaint alleged that about June 21, 1911, defendant company, when plaintiff was needing the water, unlawfully diverted from the stream through the Barnes ditch into the reservoir, fourteen million cubic feet to be shortly drawn off into the Greeley and Loveland canal and distributed to its consumers; that plaintiff needs the water for irrigation, and the conduit from the reservoir is such that it can be turned into the stream and carried down the stream to plaintiff's headgate. The prayer of the complaint is that the water, by the restraining order, be retained in the reservoir pending the suit and on final hearing be discharged back into the stream and permitted to flow down the river for diversion into its canal, and that the official defendants be commanded to assist and aid in carrying out this decree, and alleges they are made defendants for the purpose of enforcing the delivery of this water to plaintiff. The decree is as broad as the complaint.

The action affects property. Drawing water from the reservoir and redelivering it to the stream, to that extent would deplete the reservoir and deprive its consumers of the use of the water for irrigation. In such a case, the code provides the action shall be tried in the county where the property is situated. This action was brought in Logan county where the plaintiff resided, and against defendants, none of who resided or were served in Logan County. Defendant's reservoir, ditches and headgates are in Larimer county; the decree operates upon a reservoir and waters stored therein, in Larimer County, the official residence of the Greeley and Loveland Irrigation Company, and none of its property are in Logan county. The code further provides that any case against a public officer, for any act done by him by virtue of his office, or for failure to perform, shall be tried in the county where the cause arose. This cause, if any, arose in Larimer county by reason of defendant Kelley in his official capacity as Water Commissioner in Water District No. 4, authorizing and permitting the Irrigation Company to raise its headgate in Larimer county during a flood, and divert the water into the reservoir in Larimer county, in which county he resided and was served with summons. The other official defendants were served at their residence in Denver county. The injury complained of against the official defendants, grows out of an official act by Kelley as Water Commissioner in Water District No. 1, performed in Larimer county. Under all these circumstances it is clear to me the motion to transfer the case to Larimer County for trial, should have been granted, irrespective of the conflict of jurisdiction, and the court lost jurisdiction over the case when the motion was interposed, except to enter an order transferring it to the proper county for trial.

5. Aside of any the foregoing matters, I am con-

vinced the decree of the lower court is inherently and fundamentally wrong. This water was stored in the reservoir on the 21st of June. The court ordered it retained in the reservoir until the 15th of August and then drawn off and delivered to a ditch 175 miles down the river, with no interest whatever or right in the reservoir. The proceeding was converted into a trial over the rights of property, and the court found that a specific amount of water stored in the reservoir belonged to the plaintiff, not by reason of any interest it had in the reservoir, but because of an irrigation ditch priority in water district No. 64. I cannot bring myself to believe that water running in a natural stream belongs, on account of an adjudication decree, to anyone to the extent that should the River Commissioner when policing the stream err in judgment in distributing the water, and permit it to be diverted into a reservoir, for use shortly thereafter for irrigation, when it should have gone to some ditch for direct irrigation, that a court, even though it finds he made a mistake, should order the stored water to be held for a definite period in the reservoir and then turned into the river for the use of another person who has no right in the reservoir. River Commissioners, from the very nature of things must be allowed some discretion in the policing of streams, and at times have to meet and solve intricate and troublesome situations and mistakes are sometimes made both in law and fact in the distribution of water. It never was contemplated that these mistakes should be corrected in this manner, and the stored water delivered to another whom the court afterwards finds was entitled to divert it for direct irrigation.

Decided January 4, A. D. 1915. Rehearing denied February 1, A. D. 1915.