[Nos. 7867, 7874.]

## COMSTOCK ET AL. V. FORT MORGAN RESERVOIR & IRRIGATION COMPANY ET AL.

1. MAXIMS—*A Vain Thing Not Required.* Equity will not direct what it is clear is not, or may not be, of benefit to those demanding it. (108.)

2. EQUITY—*Remedy at Law.* The return to the stream of water unlawfully diverted at a prior date will not be decreed where such return will not, at the time, be of benefit to the complaining party, and where it is problematical whether it will be so in the future. (107, 108.)

3. INJUNCTION—*To Restrain the Unlawful Diversion of Water.* An appropriator for direct irrigation allowed an injunction to restrain the water commissioner from diverting water for storage by junior appropriators, where the water in the stream is not sufficient to supply the needs of such senior appropriator.

Neither the possible removal of the water commissioner for his misconduct, nor an action at law for damages, afford adequate relief in such case. (108.)

4. IRRIGATION—*Division Engineer—Powers—Statute Construed.* By Rev. Stat. secs. 3332-3344, 3350, the several decrees for the adjudication of priorities in an irrigation division are to be treated as one, and the water distributed accordingly. To effect this, the Division Engineer is vested with control over the Water Commissioners in his division. Where the engineer directs a commissioner to cease supplying water to priorities post-dating a specified date, it is the duty of the commissioner to obey such order, and he is without authority to disregard it, even though, by a sudden rise in the stream he is of the opinion that there is sufficient water to supply the volume required by the order. It is his duty in such case to report the change of conditions and await the direction of his superior. (111.)

An appropriator injured by the Water Commissioner's disregard of the orders of the Division Engineer may be awarded an injunction against the commissioner, to compel obedience to such orders. (111.)

But it appearing that the commissioner's conduct was not wilful, but inspired by a mistaken opinion as to his duty, without instigation of the appropriator profiting by his mistake, it was held the injunction should not have been granted. (112.)

*Error to Morgan District Court.* Hon. H. P. BURKE, Judge.

Messrs. RHODES & FARNSWORTH, Mr. R. W. FLEMING, for plaintiffs in error.

Mr. JAMES W. MCCREERY, Mr. DONALD C. MCCREERY, and Messrs. STEPHENSON & STEPHENSON, for defendants in error.

The questions necessary to determine in these cases are the same, and will be considered in one opinion.

On June 14th, 1912, the Fort Morgan Reservoir and Irrigation Company, and others taking water for direct irrigation from the South Platte River, in Water District No. 1, instituted two actions; one against the Larimer and Weld Reservoir Company, et al., and the other against the North Poudre Irrigation Company, et al. In each case the State Engineer, Division Engineer of Irrigation Division No. 1, and the Water Commissioner of District No. 3, were made defendants. In the case against the North Poudre Reservoir Company, the Water Commissioner in Water District No. 1 was joined as defendant. The object of the actions was to compel the defendant companies to restore water, alleged

to have been wrongfully impounded in their respective reservoirs, to the Cache La Poudre, from which it had been diverted; to restrain the commission of such alleged wrongful acts in the future, and to restrain the defendant water officials from permitting such alleged wrongful diversions, when the conditions existed under which the companies are sought to be enjoined. Each of the defendant companies has decreed rights to divert water from the Cache La Poudre, in Water District No. 3, and store it in its reservoirs for agricultural purposes. The Cache La Poudre is a tributary of the South Platte, and empties into that stream above the headgates of the canals of plaintiffs.

Water District No. 1, consists of lands irrigated by water taken from that portion of the South Platte between the mouth of the Cache La Poudre, and the west boundary line of Washington County, and from streams draining into that portion of the South Platte. Water District No. 3, consists of all lands irrigated by water taken from the Cache La Poudre and its tributaries. Irrigation Division No. 1 embraces all water districts consisting of lands irrigated by water taken from the South Platte and its tributaries.

The complaints allege in substance, so far as material to mention, that plaintiffs are owners of adjudicated priorities to the use of water from the South Platte, for the purpose of direct irrigation, which antedate the adjudicated rights of the defendant companies to divert water from the Cache La Poudre for storage, and also the owners of canals, the headgates of which are below the mouth of the Cache La Poudre; that on dates mentioned, which vary from the 24th day of May, 1912, to the 8th of June following, there were crops growing under the ditches of plaintiffs, covering a large acreage, which required all the water represented by their priorities; that at this time there was not sufficient water flowing in the Platte to supply such priorities, after senior appropriations had been supplied; that on dates speci-

fied, between the 29th day of May, 1912, and the 9th of June, following, inclusive, while these conditions existed, the Commissioner of Water District No. 3, unlawfully, wrongfully, and contrary to the orders of the State and Division Engineers, and contrary to the rights and demands of plaintiffs, diverted and permitted to be diverted from the Cache La Poudre, and stored in the reservoirs of the defendant companies, a great volume of water (stated in cubic feet), and that the Commissioner and the defendant companies threaten to continue such wrongful diversion for storage, when there is sufficient water flowing in the Cache La Poudre to supply senior rights in Water District No. 3, regardless of the senior decrees of plaintiffs.

In the case against the Larimer and Weld Reservoir Company, the Water Commissioner of Water District No. 3, answered, denying that during the periods mentioned in the respective complaints, he allowed or caused to flow into either of the reservoirs any water, other than the owners were entitled to receive; denied that he failed to give full recognition to all orders directed to him by the State Engineer, or Engineer of Irrigation Division No. 1, and denied he ever threatened that he would turn any water into either of the reservoirs, except upon their decreed priorities, or contrary to any order of either the State or Division Engineers. Further answering, he set out communications from which it appears that on the 29th day of May, 1912, demand had been made for water in Water District No. 1, and he was ordered to cease distribution of water to undecreed ditches, and reservoir appropriations until further orders; that on June 4th, he was directed to cease distribution to ditches and reservoirs post-dating January 1st, 1890, and to shut out six hundred seventy-one second feet from ditch and reservoir priorities post-dating that date, and on the 8th day of June, was advised, by order dated June 7th, that demands had been made to supply priorities in Water Dis-

tricts Nos. 1 and 64, antedating January 1st, 1890, for nine hundred forty-three second feet, and was ordered not to distribute water to any ditch or reservoir, decreed or undecreed, of later date than January 1st, 1890. In two of these communications he was directed in case of heavy rains or floods to report to the Division Engineer immediately. He also answered to the effect that on June 2nd, and after the receipt of the last two communications, there was a great increase in the flow of water in the Cache La Poudre, and such a volume in the Platte below the junction of the Poudre, that he did not cease to distribute water as directed, but continued to allow water to flow into the reservoir of the Larimer and Weld Company, as in his judgment there was sufficient water then flowing from the Poudre into the Platte to supply the volume required by the orders of the Division Engineer. He then states that the Cache La Poudre is erratic in its flow; that the volume is constantly changing by reason of melting snow in the mountains, at that season of the year, and the climatic condition near its source, and for these reasons he cannot perform his statutory duties as commissioner, unless he is allowed to exercise his judgment in the distribution of water.

In the North Poudre case the Commissioner answered that on the 4th day of June the Cache La Poudre was rising, and he knew the water supply would be sufficient to supply the shortage in Water District No. 1, notwithstanding the diversion into the reservoir of the Cache La Poudre Company, and that when he received the order dated June 6th, there was passing out of Water District No. 3, water in excess of one thousand second feet.

Each of the defendant companies answered, denying that they had illegally stored, in their respective reservoirs, any water during the periods mentioned in the respective complaints, and alleged that neither they, nor the Commissioner of Water District No. 3, had diverted or stored in

their reservoirs, any water contrary to the orders of the Division Engineer, or that they ever threatened to store water to which they were not legally entitled.

The evidence established that the priorities of plaintiffs, for direct irrigation, are senior to those of the defendant companies, for storage, and that the priority of the North Poudre Company is dated March 5th, 1901, and the priorities of the Larimer and Weld Company are dated January 30th, 1890, and April 1st, 1895.

On the question of whether there was sufficient water passing out of the Cache La Poudre to supply the priorities of plaintiffs during the period water was being stored in the reservoirs, the testimony was conflicting. There was testimony that after the orders of the Division Engineer were communicated to the Commissioner of Water District No. 3, there was a considerable volume in the river passing into Water District No. 1, notwithstanding the diversions into the reservoirs of the defendant companies. The Commissioner of Water District No. 3 testified that he had never threatened to disobey any orders of his superior officers; that he did not communicate to the Division Engineer any changes in the stage of water in the river after receiving the orders from that official, and that after receiving these orders, he continued to permit water to be diverted into the reservoirs, because in his judgment, by reason of the increased flow, there was still sufficient passing down the stream to comply with the orders of the Division Engineer; that he always asserted the right to act with reference to the conditions of the river, in connection with the orders of the Division Engineer, according to his best judgment, and believed he had this right, but might be mistaken.

At the time the actions were instituted, and down to the date of trial, it appears without dispute, that on account of rains and melting snow in the mountains, there was an abundance of water passing down the Cache La Poudre,

and into the Platte, to supply all priorities mentioned in the orders of the Division Engineer to the Water Commissioner of Water District No. 3. The court found generally in favor of plaintiffs; refused to make requested special findings, and rendered judgment in each case, enjoining the defendant companies and the Water Commissioner in Water District No. 3, from diverting, or permitting the diversion of any water from the Cache La Poudre into the respective reservoirs, when there shall not be flowing in the South Platte, at the points of intake of the several ditches belonging to the plaintiffs, in Water District No. 1, sufficient to supply their several appropriations, senior in time to the appropriations of the defendant companies, when needed by plaintiffs or some of them, for the irrigation of land lying under their several ditches, and that each company return to the Cache La Poudre the volume found to have been wrongfully impounded, directly or indirectly, if possible, and in form, manner and method as might be determined by the State and Division Engineers, at such time during the year 1912, as the same should be needed and demanded for direct irrigation by consumers of water; under priorities senior to those of defendant companies in Water District No. 1. The defendants bring the case here for review on error.

GABBERT, C. J., delivered the opinion of the court.

At the time the actions were commenced, and from that date down to the time they were tried and judgments rendered, there was an abundance of water flowing in the stream to supply all priorities. The effect of the judgments requiring the defendant companies to restore the water impounded in their respective reservoirs to the stream, at such time during the year 1912, under the direction of the State and Division Engineers, as it should be needed and demanded by consumers of water having priorities senior to those of the companies in Water District No. 1, was to bring about a situation, which might result in such water being

of no benefit to any one. The companies could not use it, the plaintiffs did not need it, and consumers of water in District No. 1, might not require it. Equity will not direct an act to be performed which it is clear is not, or may not be, of any benefit to those invoking its aid. Neither will a court of equity entertain jurisdiction where a plain, adequate and complete remedy can be had at law. The waters of the Platte above the intake of the ditches of plaintiffs may have been depleted to their damage by the diversions into the respective reservoirs of the defendants, but when the actions were instituted and the judgments rendered, the restoration of the impounded water to the stream would not benefit them, and whether it would be of any benefit in the future was purely problematical. So that in these circumstances, their remedy on this branch of the cases was actions at law for damages resulting from a shortage of water, caused by the diversions into the reservoirs. Such actions would have afforded them a plain, adequate and complete remedy, and hence, precluded them from resorting to equity.

The next question to consider is whether the court erred in enjoining the defendant companies and the Water Commissioner in Water District No. 3, from diverting water for storage into the respective reservoirs of the corporate defendants, when there was not sufficient water flowing in the river, at the points of intake of the ditches of the plaintiffs, to supply their appropriations, senior to those of the defendant companies, when needed by plaintiffs or some of them for direct irrigation. On this subject it is contended by counsel for defendants, that as the statutes provide for the suspension and removal of water commissioners, and the appointment of a deputy to assume control of the district of a suspended commissioner, that parties injured cannot resort to equity for injunctive relief against water commissioners who fail to obey the law in the distribution of water. The removal of a water commissioner is not a legal

remedy. This is a punishment, but does not redress the injury resulting from his failure to distribute water as the law requires. When water is taken by, or distributed to junior appropriators from time to time, to the injury of those having senior rights, actions at law for damages will not afford complete or adequate relief, for the reason that such course would require a multiplicity of suits to recover damages for each wrongful act, and hence, in such circumstances, resort may be had to equity to prevent them. *Rogers v. Nevada Canal Company.* Decided at this term: *Medano Ditch Company v. Adams,* 29 Colo. 317, 68 Pac. 431.

The Commissioner of Water District No. 3, did not obey the orders of the Division Engineer of Irrigation District No. 1, with respect to the distribution of water, but continued to supply priorities which he had been ordered to close down. His excuse for this action was that there had been a rise in the river, and in his judgment it was not necessary to obey orders of the Division Engineer, because there was flowing down the stream the volume he was ordered to shut out, notwithstanding the fact that he continued to supply priorities which he was directed to close down. The duty of a water commissioner as originally prescribed was to distribute water in the natural streams of his district, according to priority of right. Section 3432, Revised Statutes 1908. Water districts, however, did not in each instance, embrace the entire drainage of a main stream, and naturally when a stream and its tributaries were included in two or more districts, water was not always distributed in accordance with the rights of appropriators in the several districts. To obviate the difficulties resulting from these conditions, irrigation divisions were created, which practically embrace all the drainage of a given stream. Provision was also made for the appointment of an engineer in each of these divisions, who was authorized to exercise general control over the water commissioners of the several dis-

tricts, within his division, and distribute water therein. in accordance with the rights of priority of appropriation, as established by the judicial decrees entered in the several districts included in such division. Sections 3335 and 3344, ibid.

By section 3350, *ibid.*, it is made the duty of a water commissioner to report to the division engineer of his division, the amount of water necessary to supply ditches, canals and reservoirs in his district; the amount of water actually coming into his district; whether such supply is on the increase or decrease, and what ditches, canals or reservoirs are without their proper supply. The Division Engineer is required to file and preserve these reports, and from them ascertain what ditches, canals and reservoirs are, and what are not, receiving their proper supply of water, and if it appears that in any district in his division, any ditch, canal or reservoir is receiving water, whose priority post-dates that of a ditch, canal or reservoir in another district, as ascertained from his register, he shall at once order such post-dated ditch, canal or reservoir shut down, and the water given to the elder ditch, canal or reservoir. "His orders being directed at all times to the enforcement of priority of appropriation, according to his tabulated statement of priorities to the whole division, and without regard to the district within which the ditches, canals and reservoirs may be located." By sections 3346 and 3349, *ibid.*, provision is made whereby the Division Engineer obtains copies of decrees fixing priorities of water, from which he is required to prepare the register and tabulated statement of priorities to the use of water in his division mentioned in section 3350.

By virtue of these provisions we have ruled that the several decrees entered in the water districts embraced in an irrigation division, are to be treated as one, and the water distributed accordingly, and that it is the duty of the engineer of an irrigation division to make such distribution

by direction to the water commissioners under his control. *Lower Latham Ditch Co. v. Louden Irrigating Canal Company,* 27 Colo. 267, 60 Pac. 629, 83 Am. St. 80; *McLean v. Farmers' High Line Canal and Reservoir Company,* 44 Colo. 184, 98 Pac. 16; *Farmers' Independent Ditch Company v. Agricultural Ditch Company,* 22 Colo. 513, 45 Pac. 444, 55 Am. St. 149. In other words, the purpose of the statutory provisions, to which we have referred, is to have the waters of a stream included in two or more water districts so distributed that the appropriations in the different districts will receive the water to which they are severally entitled in the order of their priority, as established by the decrees in such districts. To attain this end, the Division Engineer is vested with control over the commissioners in his division. It is his duty to make inter-district distribution of water in his division. This is accomplished by directions to the commissioners under his control, and it follows that when he directs a commissioner in his division to cease supplying water, to priorities post-dating a specified date, it is the duty of the commissioner receiving such order to obey it; otherwise the purpose of the statute would be defeated, and the waters of a stream included in several districts could not be distributed in accordance with the relative rights of the owners of priorities as established by the decrees in such districts. If, after a commissioner receives an order from the Division Engineer, there is a rise in the streams in his district, it is his duty to forthwith report that fact to the latter official, but until the order he has received is modified or changed, he is without authority to disregard it, merely because in his opinion it is not necessary. When, therefore, a commissioner refuses or neglects to obey the orders of his superior, in circumstances which indicate an intention to continue that course, he may be compelled, in an action by those injured, to distribute the water in his district as directed by the Division Engineer of the irrigation division

which includes his district. *Rogers v. Nevada Canal Company, supra; Kern Reservoir and D. Co. v. Weldon Valley D. Co.,* 57 Colo. 302, 141 Pac. 1196; *Greeley and Loveland I. Co. v. Farmers' Pawnee D. Co.,* 58 Colo. 462, 146 Pac. 247.

The next point to determine is whether the facts are such as to justify the injunctive relief granted on the question being considered. The testimony does not establish that either of the defendant companies solicited the commissioner to disobey the orders of the Division Engineer. The commissioner stated that he always asserted the right to act with reference to the condition of the stream in connection with the orders of the Division Engineer, according to his best judgment; that he believed he had this right, but might be mistaken. From this it does not appear that the commissioner wilfully disobeyed any orders of his superior, but acted on a mistaken notion as to his duties. Neither does it appear that either of the companies committed any acts which induced the commissioner to disregard the orders of the Division Engineer. In these circumstances, we think the judgments on the question under consideration are erroneous.

The judgment in each case is reversed and the causes remanded with directions to dismiss.

*Judgments reversed and causes remanded with directions.*

SCOTT, J., and TELLER, J., concur.

Decided July 6, A. D. 1915. Rehearing denied October 4, A. D. 1915.