## No. 11,819.

OLNEY SPRINGS DRAINAGE DISTRICT, ET AL. *v.* AUCKLAND.

Decided April 2, 1928.   Rehearing denied May 7, 1928.

## Action for injunction.   Decree for plaintiff.

### *Affirmed.*

1.  APPEAL AND ERROR—*Fact Findings.*   The Supreme Court in reviewing a case is bound by fact findings of the trial court which are sustained by the evidence.

2.  WATER RIGHTS—*Source of Supply—Litigation.*   The source of supply of irrigating water does not concern one who unlawfully deprives another of its use.

3.  DRAINAGE DISTRICTS—*Escaping Water—Nuisance—Abatement.*   Where a drainage district permitted breaks in the banks of its outlet ditch, from which water escaped onto and damaged plaintiff's land, a nuisance was created and the directors of the district having ignored plaintiff's complaints, it is held that he had a right to enter upon their right of way and abate the nuisance.

4.  WATER COURSES—*Drainage.*   A natural water course may be used as a conduit or outlet for the drainage of lands, at least where the augmented flow will not tax the stream beyond its capacity and cause the flooding of adjacent lands.

5.  DRAINS AND DRAINAGE—*Adjoining Lands.*   There is no right on the part of one land owner to drain the water from his land over that of his neighbor without the latter's consent.

6.  *Damage.*   One who attempts to gather water into a drain or to maintain a drain for his own convenience, is bound to take due care that no injury is done by it.

7.  WATER RIGHTS—*Unlawful Diversion—Injunction.*   Injunction lies to restrain the wrongful diversion of water away from one lawfully entitled to the use thereof.

8.  PARTIES—*Drainage Water.*   In an action concerning drainage water, the judgment affects only parties to the suit.

9.  DRAINAGE DISTRICTS—*Directors—Powers—Abuse.*   Courts will correct an abuse committed by directors of a drainage district under the guise of discretionary powers.

10.   *Directors—Injunction.* Directors of a drainage district who attempt to act beyond the scope of their official powers, held properly restrained by injunction.

11.   APPEAL AND ERROR—*Unnecessary Determination of Questions.* The Supreme Court is not bound to pass upon questions not necessary to the determination of the case under consideration.

*Error to the District Court of Crowley County, Hon. James A. Park, Judge.*

Mr. HARRY E. MAST, Mr. JOHN H. VOORHEES, for plaintiffs in error.

Messrs. SABIN & SABIN, for defendant in error.

*Department One.*

MR. JUSTICE ADAMS delivered the opinion of the court.

THIS is an action brought by Auckland against Olney Springs Drainage District, the directors thereof, and Pantle, a ditch contractor, to enjoin defendants from diverting the water collected in the drainage system of the district away from its outlet above plaintiff's lands on which he uses it for irrigation, and from changing its course into a new channel away from such lands, and so depriving plaintiff of the use of such waters. The trial was to the court; general and special findings were for plaintiff and a permanent injunction issued. The drainage district and its co-defendants assign error and bring the case here for review. When not designated by name, Auckland will be referred to as plaintiff and the other parties as defendants, their alignment in the trial court.

The drainage district is organized under the laws of the state to drain a large body of land in Crowley county. The drainage is mostly by means of a tile system, but the outlet is by open ditch, extending beyond the borders of the district. Plaintiff's land lies outside the district,

in a southeasterly direction therefrom, and is devoted to general farming purposes. The district built its system and discharged the drainage waters at a point near the west line of plaintiff's land, outside his premises. This point of discharge was at the end of the above open ditch, which parallels the west line of plaintiff's land and runs south a distance of 750 feet from the northwest corner of such land, at which point the ditch terminates. The slope of the land is toward the southeast. There is a swale or draw on plaintiff's land, into which the drainage waters flowed for a time. The parties agree in their briefs, and the evidence tends to show, that this swale constitutes a natural water course. The waters passing there-through eventually find their way into the Arkansas river, but plaintiff contends that if the augmented flow from the drainage be permitted, it will continue to injure his land by excessive saturation, rendering it unfit for cultivation. The principal ground of his complaint, however, is that the outlet ditch on the district's 750-foot right of way soon broke in several places and broadcasted the water through the breaks on plaintiff's land, and thereby injuriously affected a large part of such land, by seepage and saturation chiefly in this way rather than because of the water in the draw.

Plaintiff testified that his land became so wet that he could not get across it. He says that he protested to the drainage district officers, but without avail, whereupon he went on the district's right of way, a distance of three or four feet at the northwest corner of his land, and diverted the water by dike and flume, and used it in the cultivation of his crops. Plaintiff had previously used water from the swale or draw before the district was organized or completed, and continued such use thereafter. He filed a map and statement of his irrigation system in the office of the state engineer, making claim to the waters of the swale or draw, before the original outlet of the drainage was constructed, and thereafter filed an amended map and statement. Al-

though more than a year had elapsed since the actual construction of the defendant corporation's drainage system, it did not claim or use the water, and has never filed on it. Other facts necessary to an understanding of the case are contained in the findings and decree, which recite the following:

"1. The court doth find the issues herein joined in favor of the plaintiff and against the defendants, and that the allegations of the plaintiff's complaint are true.
\* \* \*

"2. \* \* \* That the draw or swale on plaintiff's land where the defendants cast the water from their drainage system upon plaintiff's land is not such a water course as defendants are entitled to use as an outlet for their drainage system; that it was simply a broad swale or depression and had neither channels, bed or banks.

"3. \* \* \* That the collection of percolating waters and surface flow into the drainage ditch of defendants, and the casting of said water onto plaintiff's land in a continuous flow, caused the water to flow onto plaintiff's land in a different manner, and in a greater volume, and in a more injurious way, than if such waters had not been interfered with by the defendants, and therefore constituted a trespass and nuisance to plaintiff's land.

"4. \* \* \* That plaintiff had a right to prevent the injury to his land, and to abate the nuisance caused by such water being cast upon his land, and had a right to enter upon the right of way of the defendants to accomplish that end.

"5. \* \* \* That the drainage water flowing in the outlet of the drainage system of the corporation defendant was not filed upon or appropriated at any time by the corporation defendant and. that said drainage water was subject to appropriation by the plaintiff in the same manner as other waters of the state are subject to appropriation and that he made a filing upon said waters and applied them to beneficial use for the irrigation of

his land and that in so doing, he perfected a valid appropriation thereof.

"6.  The court doth find from the evidence that the purpose of the defendants other than the defendant John C. Pantle, in seeking a new outlet for their drainage system is to divert the water away from plaintiff's irrigation system, rather than for the benefit of the drainage system itself, and that this the said defendants have no right to do."

A permanent injunction against defendants followed the above findings.

1.  Counsel for defendants vigorously attack plaintiff's claim of right to the waters in question, but it is only necessary to point to the fifth finding, that they were not filed upon or appropriated at any time by the drainage district, that they were subject to appropriation by plaintiff, that he filed upon them, applied them to a beneficial use for the irrigation of his lands, and that in so doing he perfected a valid appropriation thereof.  We are bound by these findings, which are amply sustained by the evidence.

The law of water appropriation by diversion and application to a beneficial use is so well settled, and has been so frequently and exhaustively discussed that it would be idle to repeat it.  The finding that the drainage district did not make any appropriation is also sustained by the evidence.  Because of this fact, the attempt to draw into the discussion chapter 104, Session Laws 1923, concerning appropriation of water by drainage districts, is wholly beside the point.  It is not involved in any way. Likewise, section 1637, C. L. 1921, relating to seepage and spring waters, is immaterial to this case.  No question of the relative rights of senior or junior appropriators is involved.  Counsel for defendants themselves have unconsciously removed the question of seepage waters from the realm of debate, by devoting many pages of their brief to prove that the swale or draw is a natural stream.  Counsel for plaintiff concedes that this is true.

This pleasant harmony obviates much labor on the part of the court by eliminating perplexing questions of seepage as sources of supply. Plaintiff's right to the use of the water may be justified under the general doctrine of appropriations from natural streams, if on no other ground, which we need not decide. In short, plaintiff has a water right and needs it, and defendants are not even junior appropriators; so, whether the water comes from the clouds or under the earth is no concern of defendants when it is shown, as here, that they unlawfully deprived plaintiff of the use of such water.

2. As to defendants' invasion of plaintiff's rights: Little need be said of the use at one time made by the drainage district of the swale or draw on plaintiff's land, as an outlet for drainage waters from the district. This situation no longer obtains and is not the subject of the present litigation, except in an explanatory way. Plaintiff claims no damages or injunctive relief therefrom. His claim is based on the fact that defendants threatened to and would, unless restrained, divert all of the waters in question away from his land, and it was on such proof that the injunction issued. Counsel for defendants argue that plaintiff was a trespasser when he constructed a conduit from the drainage canal on the district's right of way, to carry the water over and upon plaintiff's lands for irrigation, but the district was the trespasser; it had created a nuisance by permitting the breaks in its outlet ditch, which caused water to be broadcasted on plaintiff's lands, and spoiled a large part of it for cultivation. The directors ignored plaintiff's protests and he had a right to enter and abate the nuisance. *Crabtree v. Baker,* 75 Ala. 91, 51 Am. Rep. 424.

3. A natural water course may be used as a conduit or outlet for the drainage of lands, at least where the augmented flow will not tax the stream beyond its capacity and cause the flooding of adjacent lands. 19 C. J. p. 685, § 157. But, as said in Farnham on Water and Water Rights, p. 2555, "There is no right on the part

of one land owner to drain the water from his land over that of his neighbor without the latter's consent." And further, at page 2697 of the same work: "One who attempts to gather water into a drain, or to maintain a drain for his own convenience, is bound to take due care that no injury is done by it." We agree with these statements as applied to the case at bar.

4. Injunction lies to restrain the wrongful diversion of water away from one lawfully entitled to the use thereof. Such remedy has been applied times without number. A few of the cases are: *Kane v. Porter,* 77 Colo. 257, 235 Pac. 561, 44 A. L. R. 165; *Rogers v. Nevada Canal Co.,* 60 Colo. 59, 151 Pac. 923, Ann. Cas. 1917C, 669; *Comstock v. Ft. Morgan Res. & Irr. Co.,* 60 Colo. 101, 109, 151 Pac. 929; *Medano Ditch Co. v. Adams,* 29 Colo. 317, 68 Pac. 431; *McClellan v. Hurdle,* 3 Colo. App. 430, 33 Pac. 280.

5. Counsel for defendants attack plaintiff's use of the waters of the swale or draw, on the ground that it will or may interfere with the prior rights of other appropriators of water from the Arkansas river, of which the swale is said to be a tributary, but however this may be, such appropriators are not before us; this is not a statutory adjudication of water rights, and the judgment affects only the parties to the suit. *Hackett v. Larimer & Weld Res. Co.,* 48 Colo. 178, 109 Pac. 965.

6. Objection is lodged by counsel for defendants because the trial court interfered with what they call the discretionary powers of the directors of the drainage district to change the course of its outlet ditch. With the district's engineering problems, the court is not generally concerned, when the rights of others are not affected, but the court is concerned and will correct an abuse committed under the guise of discretionary powers. Here it was shown that the change was not made to benefit the drainage district; that it was an actual injury to the district; that the fall in the new ditch is one tenth in a hundred feet, while in the old one it is .24 of a foot to

a hundred feet; that the new outlet if completed would not be as efficient for practical use as the old, and that the new was more expensive than the old.   The trial court evidently sought to avoid the use of harsh terms in characterizing the acts of the directors, but on a full review reached the conclusion expressed in the sixth finding recited above.   This indicates that the controversy had reached a stage where the directors were bent on hurting plaintiff, even if it thereby injured the efficiency of their own drainage system, or at least did not benefit it, and that they put themselves to much unnecessary trouble in bringing this about.   The evidence sustained the finding. The directors acted entirely beyond the scope of the official powers committed to them, and were rightly restrained.

7.   It happens repeatedly that counsel for different litigants importune us to pass on questions not necessary to the decision, and this case is no exception.   Counsel for defendants say that the case is of grave importance to the irrigation and drainage interests of the state. This may be so, but the very magnitude of abstract questions of law intensifies the danger and injustice to others if we should decide their cases in advance, without giving them a chance to be heard, or without even knowing that they have a controversy.   We have endeavored to confine ourselves to the rule of one case at a time, and we approve of the injunction granted.

Judgment affirmed.

MR. JUSTICE BURKE, sitting for MR. CHIEF JUSTICE DENISON, MR. JUSTICE WHITFORD and MR. JUSTICE BUTLER concur.