## GUNNISON IRR. CO. v. GUNNISON HIGHLAND CANAL CO.

No. 2821.  Decided June 12, 1918.  (174 Pac. 852.)

1. APPEAL AND ERROR—NECESSARY PARTIES—SEVERAL OR JOINT AWARD.  Although under Comp. Laws 1907, section 1288x40, all parties who have diverted water from a stream may be made parties to an action concerning water rights, the same is not required, and where, in a judgment, several and not joint awards of water rights were made, and no joint interests were alleged or found, any party may appeal independently.  (Page 352.)

2. WATERS AND WATER COURSES—APPROPRIATION AND PRESCRIPTION—PRIORITIES.  Prior appropriation for beneficial use is, and has always been, the basis of acquisition of water rights under Comp. Laws 1907, section 1288x20, and previous irrigation statutes.[1]  (Page 354.)

3. WATERS AND WATER COURSES—RESERVOIRS—TITLE TO WATER AS PERSONALTY.  Notwithstanding it has been held that under certain circumstances title is acquired to the corpus of confined water as personalty, the doctrine of ownership by storage cannot be relied on to invade vested rights.[2]  (Page 355.)

---

[1] *Stowell* v. *Johnson*, 7 Utah, 215, 26 Pac. 290; *Becker* v. *Marble Creek Irrigation Co.*, 15 Utah, 225, 49 Pac. 892, modified on rehearing, 49 Pac. 1119; *Hague* v. *Nephi Irrigation Co.*, 16 Utah, 421, 52 Pac. 765, 41 L. R. A. 311, 67 Am. St. Rep. 634; *Salt Lake City et al.* v. *Salt Lake City Water & Electrical Power Co.*, 24 Utah, 249, 67 Pac. 672, affirmed on rehearing, 25 Utah, 456, 71 Pac. 1069; *Salt Lake City* v. *Gardner*, 39 Utah, 30, 114 Pac. 147.

[2] *Bear Lake & River Waterworks & Irrigation Co.* v. *Ogden City*, 8 Utah, 494, 33 Pac. 135; *Salt Lake City et al.* v. *Salt Lake City Water & Electrical Power Co.*, 24 Utah, 249, 266, 67 Pac. 672, 677, affirmed on rehearing, 25 Utah, 456, 71 Pac. 1069.

Gunnison Irr. Co. v. Gunnison H. C. Co., 52 Utah 347.

4. WATERS AND WATER COURSES—APPROPRIATION—EXTENT—MEASURE. The rights of a prior appropriator are measured and limited by the extent of his appropriation to beneficial use, and if he diverts more water than he is entitled to for seasonal use, he must return such surplus to the stream for the use of subsequent appropriators.[3] (Page 353.)

5. APPEAL AND ERROR—REVIEW—CHANGE OF THEORY. Where a case was tried to quiet title to the use of waters upon the theory of acquisition by appropriation for beneficial use by direct irrigation, it cannot be contended on appeal that it was for the right to store for use from time to time as crops require. (Page 353.)

6. JUDGMENT—LEGAL EFFECT—LIMITED BY PLEADINGS. The legal effect of a court decree must be limited to the issues raised by the pleadings. (Page 357.)

7. WATERS AND WATER COURSES—RESERVOIRS—WRONGFUL IMPOUND-ING—SALES. A prior appropriator of water cannot store in its reservoir water legally belonging to subsequent appropriators against their will, and insist upon payment from them for such stored waters, under a decree for payment by them for prior appropriator's excess water. (Page 358.)

8. EMINENT DOMAIN—WATERS AND WATER COURSES—APPROPRIATION—FORM OF REMEDY. A prior appropriator cannot, in an action to quiet title to the use of water for irrigation, be compelled to submit its reservoir to the common storage of its and subsequent appropriator's water, that being a matter of eminent domain to be exercised under provision therefor in Comp. Laws 1907, section 3590, and section 3588, as amended by Laws 1909, c. 47.[4] (Page 359.)

9. WATERS AND WATER COURSES—STORED WATERS—COMMON USE OF RESERVOIR — AGREEMENT — RETENTION OF JURISDICTION—APPOINT-MENT—COMMISSIONER TO MEASURE WATER. In an action to quiet title to right to use of water, if an agreement can be reached by plaintiff and defendant, as to sharing the expense of storing waters, the court may, under our practice, retain jurisdiction, appoint a commissioner to supervise the release of waters, and apportion expense as per stipulation made, the commissioner to be appointed annually.[5] (Page 360.)

---

[3] Hague v. Nephi Irrigation Co., 16 Utah, 421, 52 Pac. 765, 41 L. R. A. 311, 67 Am. St. Rep. 634; Becker v. Marble Creek Irrigation Company, 15 Utah, 225, 49 Pac. 892, modified on rehearing, 49 Pac. 1119.

[4] Salt Lake City Water & Electrical Power Co. v. Salt Lake City, 25 Utah, 441, 71 Pac. 1067; Monetaire Mining Co. v. Columbus Rexall Consolidated Mines Co., 53 Utah, 413, 173 Pac. 172.

[5] Salt Lake City v. Gardner, 39 Utah, 30, 114 Pac. 147.

Appeal from the District Court of Sanpete County, Seventh District; *Hon. J. E. Booth,* Judge.

Action by the Gunnison Irrigation Company against the Gunnison Highland Canal Company and others.

From a judgment rendered, the Gunnison Highland Canal Company appeals.

AFFIRMED in part and remanded in part.

*Thurman, Wedgwood & Irvine* for appellant.

*Jacob Johnson* and *Lewis Larson* for respondent.

STEPHENS, District Judge.

In this case the Gunnison Irrigation Company, a corporation of Utah, plaintiff below and respondent herein, brought an action in the district court of Sanpete County, to quiet title to the right to use the waters of the Sanpitch river and its tributaries. Certain defendants in addition to the defendant and appellant, Gunnison Highland Canal Company, a corporation of Utah, were joined in the action below, all of the defendants, including the appellant, being joined because of adverse claims alleged. From the decision by the trial judge, after a full hearing upon the issues raised by the pleadings, this appeal is taken by the Gunnison Highland Canal Company. No appeal was taken by the other defendants. The appeal was once decided, and a written opinion filed December 1, 1916, prior to the enlargement of this court by chapter 54, Laws of Utah 1917. Since that date, however, a motion for a rehearing has been submitted and granted, and the case reheard before the court as now constituted. Therefore the former opinion, which was not published, is superseded by this opinion, which will stand as the final action of the court.

As they appear from the evidence and findings, the facts in this case are as follows: Over a long period of years next

preceding 1888, certain land-owning farmers of Sanpete County, by appropriation and application to a beneficial use upon their lands of the waters of the Sanpitch river and its tributaries, acquired primary rights to the use of such waters for irrigation. In 1888 these primary rights were assigned by the owners to the respondent company in exchange for shares of stock entitling the holders to the use of water. The Sanpitch river, in common with most of the small streams of the arid regions, has excessively high waters in the early part of the irrigation season, much more than sufficient in volume to satisfy the needs of the respondent at such time; but the flow of the river later in the season is insufficient to supply the respondent's later needs. Therefore in 1888 the respondent constructed a reservoir across the channel of the Sanpitch river for the purpose of storing from the excessive flow of the early season an amount of water in excess of its needs for that time, but to be used during the low-water period to follow. After the construction of this reservoir the defendants below and the appellant also acquired by appropriation and application to a beneficial use upon their lands, respectively, secondary and tertiary rights to the use of such waters of the streams in question as were in excess of the amount appropriated and beneficially applied by the respondent. The court below found from the evidence that respondent had a primary right to the use of sufficient water to irrigate 7,250 acres of land at a duty of fifty acres to the second foot from the beginning of the irrigation season to the 15th day of June of each year, and at a duty of sixty-five acres to the second foot from the 15th day of June to the close of the irrigation season of each year; or, in terms of second feet only, as determined by acreage and duty, to a flow of 145 second feet of water from the 1st of January of each year to the 15th of June following, and to a flow of 111 35/65 second feet of water from the 15th of June to the end of the irrigation season. Such rights were declared prior to the rights of defendants and appellant. The rights of the defendants other than the appellant were then determined by the court in certain amounts and order, as a class of secondary rights to certain

second foot quantities after the satisfaction of the respondent's rights; and, finally, the court found that the appellant, after the satisfaction of the primary rights of the respondent and the secondary rights of the defendants other than the appellant, was entitled to a tertiary right to the use of all of the remaining waters of the streams in question. These findings and awards, so far as amounts and priorities are concerned, are in no way disputed. The evidence also shows that at least from time to time, if not during every season (the possible distinction here suggested is not material to the question presented on this appeal), the amount of water flowing in the Sanpitch river and its tributaries, including the amount that can be stored in the reservoir, totals in excess of the respondent's award of primary rights as above set forth, and in excess of the amount of water that respondent has at any time during the acquisition of its rights applied to a beneficial use upon the land. Such a conclusion is not only justified by the evidence, but, as will be seen, is the raison d'etre of the position taken by the respondent in this appeal. That is to say, unless such excess existed, no dispute of the nature set out below could arise.

After an informal decision had been rendered by the trial judge, and after proposed findings of fact, conclusions of law, and decrees, differing in certain particulars, had been submitted by the plaintiff and the defendants below, the trial court rendered the following "Decision":

"On the 20th day of December, 1912, by stipulation of the attorneys for all the parties in this matter, this matter came on for hearing at Provo on the objections of the defendants to the signing of the proposed findings of fact, conclusions of law, and decree presented for the court's approval by the attorneys for the plaintiff. After hearing said objection and arguments thereon, the court now finds that the proposed findings of fact, conclusions of law, and decree, as submitted by the attorneys for the plaintiff, should be amended in the following particulars:

"(1) There should be a commissioner appointed by this court on or before the 15th day of February, annually.

"(2) That whenever in the opinion or judgment of the said commissioner the annual flow of the waters of Sanpitch river and the tributaries, together with the water stored in the reservoir of the plaintiff, will be more than sufficient to supply the claims of the plaintiff, together with other rights that are not disputed in this case, the excess may be measured out by the plaintiff, under the direction of said commissioner, to the defendants on the defendants paying or guaranteeing to the plaintiff such price as the parties hereto may agree upon; or, if agreement by them cannot be reached, then to be fixed by the commissioner.

"With these modifications, the said proposed findings of fact, conclusions of law, and decree, as prepared by the plaintiff's attorney, will become final in this case."

So far as amounts and priorities are concerned the findings, conclusions, and decree of the plaintiff, referred to in the decision just quoted, reflect the figures set forth above in this opinion.

A question of jurisdiction, preliminary to the main contention in the case, though raised only in argument, rather than properly, by a motion to dismiss the appeal, will be considered and disposed of first. As pointed out above, certain parties defendant to the action below are not parties to this appeal. Respondent contends that, since they were not made parties to the appeal, the court is without power to consider the appeal. The contention is not meritorious. In actions to adjudicate the rights of appropriators from a stream all appropriators are proper parties; they may be joined, and the court may in one judgment settle the relative priorities and rights of all the parties to such action. Section 1288x40, Compiled Laws of Utah 1907. But it is not necessary to join every appropriator in order to render effective a judgment respecting the rights of actual parties. *Frost* v. *Idaho Irrigation Company,* 19 Idaho, 372, 114 Pac. 38, at 41. Moreover, as appears from the statement above, the interests of the various defendants were separate, not joint, and the court below made several, not joint, awards of water rights to the parties. No union of interest between the parties was

alleged or found. Under these circumstances it is settled that any party may, independently, appeal. *Orleans-Kenner Electric Ry. Co.* v. *Dunbar,* 218 Fed. 344, 134 C. C. A. 152; *Winters* v. *United States,* 207 U. S. 564, 28 Sup. Ct. 207, 52 L. Ed. 340; *Gilfillan* v. *McKee,* 159 U. S. 303, 16 Sup. Ct. 6, 40 L. Ed. 161.

The sole question raised by the appeal, save the point just disposed of, is as to the disposition between respondent and appellant of any excess that may exist in respondent's reservoir above the rights of the respondent as above set forth. The question is raised by dispute as to the meaning of the paragraph marked "2" of the "decision" just quoted. Stated in the terms of interpretation placed upon that paragraph by respondent and appellant, respectively, the point raised is as follows: The appellant contends that the paragraphs referred to must be interpreted to mean that whenever it can be estimated by the commissioner to be appointed by the court that from the amount stored in the reservoir, plus the amount flowing in the stream, the respondent has or will have sufficient water to satisfy the awards above set out, then any excess in the reservoir over that amount must be measured out by respondent to the defendants and the appellant in the amounts and according to the priorities established by the court below, but upon payment to the respondent for the use and upkeep of the reservoir of such sum as may be determined by the commissioner to be equitably commensurate with the benefit received from the storage of such excess, which, it is admitted, would, except for such storage, flow to waste in the early part of the season. On the other hand, the respondent contends that the paragraph in question is to be construed to mean that the rights of defendants and appellant commence only when, the reservoir of the respondent having first been filled, the sum of the overflow of the filled reservoir and the streams in suit exceeds the quantity awarded respondent. It is from such excess, and from such excess only, that the respondent, under its interpretation of the court's decision, contends the secondary and tertiary rights of the defendants and the appellant, respectively, are to be satisfied. The water in the filled

reservoir itself is thus to belong to respondent outright, and
need not be devoted to the requirements of the defendants and
appellant, but may be used or sold or held over until the fol-
lowing season in the reservoir as respondent sees fit.

Assuming, without deciding, that the paragraph under con-
sideration is verbally susceptible of the construction placed
upon it by the respondent, it is impossible to uphold such a
construction for the reason that it is against law.

In Utah the doctrine of prior appropriation for beneficial
use is, and has always been, the basis of acquisition of water
rights. Revised Statutes of Utah 1898, sections 1261, 1262;
Laws of Utah 1903, c. 100, section 49; Laws of Utah
1905, c. 108, section 49; Compiled Laws of Utah 1907,          2
section 1288x20; *Stowell* v. *Johnson*, 7 Utah, 215, 26
Pac. 290; *Becker* v. *Marble Creek Irrigation Co.*, 15 Utah, 225,
49 Pac. 892, and (modification on rehearing) 1119; *Hague* v.
*Nephi Irrigation Co.*, 16 Utah, 421, 52 Pac. 765, 41 L. R. A. 311,
67 Am. St. Rep. 634; *Salt Lake City et al.* v. *Salt Lake City
Water & Electrical Power Co.*, 24 Utah, 249, 67 Pac. 672, 61
L. R. A. 648, affirmed on rehearing, 25 Utah, 456, 71 Pac. 1069;
*Salt Lake City* v. *Gardner*, 39 Utah, 30, 114 Pac. 147. Section
1288x20 of the Compiled Laws of Utah 1907, above referred
to, provides:

"Beneficial use shall be the basis, the measure, and the limit
of all rights to the use of water in this state."

And such has been the doctrine of every decision of this
court touching water rights. It was under this doctrine that
the respondent brought its action in the district court, and
under such doctrine the various defendants and the appellant
presented their respective answers and counterclaims. Under
the evidence presented it was shown to the court that each
party had appropriated water from the streams in suit and
applied the same to a beneficial use upon farm lands. Under
the showing made below, the trial court found, with respect
to the respondent, that it and its predecessors in interest had
made prior appropriation of and had beneficially used water
from the streams in question upon 7,250 acres of land. Pur-
suant to such finding, and under the doctrine of beneficial use,

the court awarded the respondent a primary right to the use of sufficient water to irrigate 7,250 acres of land at certain duties of water. It is obvious that the contention of respondent on this appeal would have the effect of enlarging that award, and without any showing of an enlarged appropriation and application to beneficial use upon additional lands.

For such an invasion of the doctrine of beneficial use, the respondent attempts to rely upon two theories: One, that title to the corpus of the water in the reservoir is acquired by reduction of the water to possession; the other, that where a right to the use of water for irrigation of land                    3 has been acquired, the use need not be immediate; i. e., the water may be withdrawn from its source and stored to be used throughout the season as crops require. Respecting the first theory, it is undoubtedly the law that under certain circumstances title is acquired to the corpus of water as personalty. *Bear Lake & River Water Works & Irrigation Co.* v. *Ogden City*, 8 Utah, 494, 33 Pac. 135, a case applying to water confined in pipes in a distributing system; *Heyneman* v. *Blake*, 19 Cal. 579, at 595, a case applying to water confined in reservoirs and pipes in a distributing system; and see the remark of Field, J., in his dissenting opinion in the case of *Spring Valley Waterworks* v. *Schottler*, 110 U. S. 347, 4 Sup. Ct. 48, 28 L. Ed. 173, at 183, a case involving water collected from rainfall into a distributing system. The learned justice there relied upon the doctrine that things belonging to the "negative community" become the property of those who first reduce them to possession. See, also, *Hagerman Irrigation Co.* v. *McMurry*, 16 N. M. 172, 113 Pac. 823; *Salt Lake City et al.* v. *Salt Lake City Water & Electrical Power Co.*, cited supra, where at page 266 of 24 Utah, and page 677 of 67 Pac., the court held that title to the corpus of appropriated water was not acquired until the water had been inducted into the canal of the appropriator, but implied that thereafter such title was acquired. It is to be remarked that in *California Heyneman* v. *Blake*, cit. supra, has, so far as water in irrigating systems is concerned, been distinguished in *Stanislaus Water Co.* v. *Bachman*, 152 Cal. 716, at 725 et seq., 93 Pac. 858, at 862 et

seq., 15 L. R. A. (N. S.) 359, at 365 et seq., where it is held
that water flowing in an irrigation ditch is not personalty. To
the same effect, see *Copeland* v. *Fairview Land & Water Co.*,
165 Cal. 148, 131 Pac. 119.

No decision in Utah passes expressly on the question whether
title to the corpus of irrigating water is acquired by storage
thereof in a reservoir. And it is unnecessary for this court to
decide that question at this time. For even accepting the
affirmative of such a proposition at its face value, it has never,
been relied on by any court to invade vested rights. The very
basis of the doctrine, suggested by Field, J., in *Spring Valley
Waterworks* v. *Schottler*, cited supra, that things belonging
to the ''negative community'' may be reduced to possession,
and thus become the property of the captor, by very definition
excludes such acquisition of title to waters already appro-
priated by others; i. e., waters not belonging to the ''negative
community.'' All of the waters in the streams in suit were
awarded by the court, as above pointed out; primary rights
to the respondent, secondary rights to certain defendants
below, and the remainder, as tertiary rights, to appellant.
To permit respondent to acquire title to more than the award
of the court would thus be to deprive appellant of rights.

With respect to the second theory advanced by respondent,
it is undoubtedly true that a distinction may be drawn be-
tween direct irrigation or immediate use, on the one hand, and
storage for future use, on the other. Kinney on Irriga-
tion and Water Rights (2d Ed.), section 844. And the     4
right of the owner of a priority for direct irrigation to
store his water for later seasonal use has been sustained. *Seven
Lakes Reservoir Co.* v. *New Loveland & Greeley Irrigation &
Land Company*, 40 Colo. 382, 93 Pac. 485, 17 L. R. A. (N. S.)
329, and note; and see note to *Water Supply & Storage Com-
pany* v. *Larimer & Weld Irrigation Company* (Colo.) 46 L. R.
A. 322. Such right to change the purpose of use is to be sus-
tained, as is the right to change the means of use, place of use,
and point of diversion, upon the theory that the right of
enjoyment is independent of the mode. But it is well settled
and entirely elementary that all changes in the mode of enjoy-

ment must in no event violate the maxim, ''Sic utere tuo ut alienum non lædas.'' That qualification is plainly set forth in *Seven Lakes Reservoir Company* v. *New Loveland & Greeley Irrigation & Land Company*, cited supra, where, at page 385 of 40 Colo., at page 486 of 93 Pac., and page 331 of 17 L. R. A. (N. S.), Gabbert, J., in delivering the opinion of the court said:

''A priority to the use of water is a property right, which is the subject of purchase and sale, and its character and method of use may be changed, *provided such change does not injuriously affect the rights of others*.'' (Italics the writer's.)

And see: *United States* v. *Union Gap Irr. Co. (D. C.)*, 209 Fed. 274; *Greeley & Loveland Irr. Co.* v. *Farmers' Pawnee Ditch Co.*, 58 Colo. 462, 146 Pac. 247; *Hague* v. *Nephi Irrigation Co.*, cited supra; chapter 62, section 1 (section 1288x24), Laws of Utah 1909.

In short, the rights of a prior appropriator are measured and limited by the extent of his appropriation and application to a beneficial use. If he diverts more water than under this doctrine he is entitled to, he must return such surplus to the stream for the use of subsequent appropriators. No extension or enlargement of his rights as determined by the doctrine of beneficial use can be made so as to interfere with the vested rights of others. *Union Mill & Mining Co.* v. *Dangberg* (C. C.) 81 Fed. 73, at 105 and 106; *Becker* v. *Marble Creek Irrigation Company*, cited supra. The second position taken by the respondent invades this rule.

There is another and even more elementary reason why the respondent's contention cannot prevail. This case was tried to the court below under pleadings drawn, evidence heard, and findings, conclusions, and decree made solely under the theory of acquisition of rights to the use of water under the doctrine of appropriation for beneficial use. Upon the part of all parties the suit was a simple suit to quiet title to the usufruct under such theory. In no way whatever did the case as pleaded and tried involve any element either of title to the corpus of water, or right to change the mode of

enjoyment from that of direct irrigation to that of storage for use from time to time as crops require. To sustain the position of respondent upon this appeal, it would be necessary to hold that the trial court in its decision departed from the path marked out by the pleadings. The record does not justify such a conclusion. But even if the trial court had so departed from the issues, the legal effect of its decree would be limited to the issues raised by the pleadings. *Vicksburg* v. *Henson,* 231 U. S. 259, 34 Sup. Ct. 95, 58 L. Ed. 209, at 216.

It being thus adjudged that respondent has no title or right to the use of waters stored in excess of the amount awarded by the trial court, it follows that respondent cannot retain such waters in its reservoir, nor can it require appellant to purchase the same. It remains, however, to discuss the matter of compensation for storage beneficial to appellant.

As stated above, appellant is admittedly benefited by storage of an excess over respondent's primary right and defendants' secondary rights, in that waters to serve its tertiary right may, by such storage, be saved from flowing to waste in the early part of the season. Appellant takes the posi- 7, 8, 9 tion, as set forth in the statement of its interpretation of the paragraph marked ''2'' of the decision of the trial court, that the excess that appellant is, under the award of the trial court, entitled to, must, in proper priority order, be measured out to appellant by respondent upon payment for use and up-keep of the reservoir of such sum as may be determined by a court water commissioner to be equitably commensurate with the benefit received from the storage. But this contention respecting compensation cannot be determined here. It was made noteworthy respecting the question of title, and now with respect to this matter of compensation it is again to be emphasized, that the action tried below was a suit to quiet title to the usufruct of waters, and that it involved no other issue. No question of the right of appellant to the use of respondent's reservoir, as distinguished from the right to the use of appellant's water if stored therein, was presented or tried below. Three situations are conceivable, and three propositions therefore follow with respect to the matter of compensation for the

use of respondent's reservoir: (1) For storage of waters against the will of appellant, assuming the possibility of appellant's nonconsent, respondent can obtain no compensation as a matter of right; for, under the decision herein, respondent would be dealing with waters not its own, and could not lawfully insist upon payment for an act legally wrongful. Thus, if by lack of exactness in calculating amounts stored, or if by lack of nicety in the management of reservoir gates, or if intentionally, respondent should hold in its reservoir waters awarded appellant, and this without the consent of appellant, appellant could not be compelled to pay for such storage. On demand of appellant for its own waters, respondent would be compelled to release them. (2) On the other hand, respondent cannot, in this action, be compelled to submit its reservoir to the common storage of its own and appellant's waters. If by nicety of management of its water gates and exactness of calculation as to water content, respondent should retain in its reservoir only the precise amount awarded it by the court, it might then with impunity allow all other waters to flow down stream. That is to say, it might leave the stream in its natural condition so far as waters other than its own are concerned. Therefore if no agreement can be reached by appellant and respondent as to sharing storage expense in some manner commensurate with benefits, appellant is put to another action, to wit, an action to condemn a right to common use of the reservoir, the statutes of this state providing that the right of eminent domain may be exercised in behalf of the use of reservoirs for irrigating purposes (Compiled Laws of Utah 1907, section 3588, amended by Laws of Utah 1909, c. 47), and providing for a use in common (Compiled Laws of Utah 1907, section 3590), and, this court having sustained a right to condemn for a common use. *Salt Lake City Water & Electrical Power Co.* v. *Salt Lake City*, 25 Utah, 441, 71 Pac. 1067; *Monetaire Mining Co.* v. *Columbus Rexall Consolidated Mines Co.*, 53 Utah, 413, 173 Pac. 172 (decided March 11, 1918). 3) If an agreement can be reached by appellant and respondent as to sharing the expense of storage, then under our practice the trial court may retain jurisdiction, and may appoint a com-

Gunnison Irr. Co. v. Gunnison H. C. Co., 52 Utah 347.

missioner to supervise release of the waters in the proper amounts and priorities and to apportion expense according to the stipulation of the parties, if such is entered into. He should be appointed to serve annually, under the usual restrictions and with the powers customary under local decisions, as exemplified by the directions of the court respecting a commissioner in *Salt Lake City* v. *Gardner,* cited, supra.

In any event, the case is remanded for such further hearing as may be necessary to a more specific and complete adjudication of the waters in suit, in the following particulars: (a) The precise time up to which, after June 15th, respondent shall have the right to use a flow of 111 35/65 second feet should be established; (b) rights of respondent's stockholders for live stock and domestic or other purposes, if any such rights exist, should be ascertained and fixed. In these particulars the findings of fact and conclusions of law and decree should be made specific.

The findings, conclusions, and decree should also be recast to conform without ambiguity to the decision herein respecting title to the excess discussed.

In all other respects the action of the court below is affirmed. We expressly affirm the conclusion of the trial court to the effect that respondent is entitled to a primary right to the use of sufficient water from the streams in suit to irrigate 7,250 acres of land at a duty of fifty acres to the second foot from the beginning of the irrigation season to the 15th of June of each year, and at a duty of 65 acres to the second foot from the 15th day of June to the close of the irrigation season, or, in terms of second feet only, to a flow of 145 second feet of water from the 1st of January of each year to the 15th of June following, and to a flow of 111 35/65 second feet of water from the 15th of June to the end of the irrigation season. (This date, as above directed, is to be made definite.) We further expressly affirm the conclusion of the trial court that after the satisfaction of the primary right of respondent and the secondary rights of the nonappealing defendants the appellant is entitled to a tertiary right to the use of all of the remaining waters of the streams in question.

It is ordered that the costs on this appeal be equally divided between appellant and respondent.

FRICK, J. C., and GIDEON, J., concur.  THURMAN, J., being disqualified, did not participate.

McCARTY, J.

I fully concur with Judge STEPHENS in his able, lucid, and somewhat elaborate discussion of the legal propositions presented by this appeal; but I cannot fully subscribe to the conclusions announced by him regarding plaintiff's reservoir and the waters therein impounded.  I am of the opinion that the right of the defendant, Highland Canal Company, to divert water from Sanpitch river and its tributaries should be limited to an amount sufficient to irrigate the 6,000 acres of land under its reservoir and canal.

It seems that Judge STEPHENS' opinion was prepared and is based on the theory that after the high water subsides and the flow of the Sanpitch river and its tributaries reaches the normal or low water mark, the water impounded in the reservoir and the current or natural flow of Sanpitch river and its tributaries is in excess of the amount to which plaintiff is entitled.  The record, as I read it, does not support or justify any such theory or conclusion.  The evidence, without conflict, shows:  (1) That much, if not practically all, of the lands irrigated with water from the Gunnison Irrigation Company's system of canals and ditches are of such dry and arid character that they require irrigation in the early spring of each and every year to sprout and bring up the grain planted thereon, and that the natural or current flow of water in Sanpitch river has been, and is, insufficient to thus properly irrigate the lands in the early spring;  (2) that the irrigation company, in order to furnish its stockholders with an adequate supply of water for the early spring irrigation, has, during the nonirrigation season—the fall and winter months—of practically every year since 1888 until the trial of this case in 1911, stored and retained in its reservoir the waters flowing therein from San-

pitch river and its tributaries; (3) that the water thus stored during the nonirrigation season was, and is, used together with the natural or current flow of water in the river by the company's stockholders for the first or early spring watering of their crops, and that the water from the two sources of supply is not more than sufficient for that purpose; (4) that it is necessary for the company to begin drawing water from its reservoir about March 15th to April 1st of each and every year for this early irrigation. The record also shows that the Highland Canal Company's reservoir is so situated that it cannot be supplied with water from the Sanpitch river. The only sources from which water can be obtained for this reservoir are Nine Mile and Twelve Mile creeks. These streams, when not diverted, flow into Sanpitch river below the dam of the Gunnison Irrigation Company's reservoir. The defendants, therefore, have no interest whatever in the waters flowing in Sanpitch river above plaintiff's reservoir dam during the nonirrigation season. If plaintiff should permit this water, or any part of it, to flow past its reservoir and down the channel of the river during the nonirrigation season, defendants have no means of impounding or otherwise using it. The evidence, without conflict, further shows that the high-water period in that locality begins, ordinarily, about the last of May, and usually ends from about the 15th to the last of June, and that the quantity of high water varies. In some years the high water is more than sufficient to supply all demands, and in other years it is not sufficient to supply the amount to which plaintiff is entitled. The reservoir is therefore in some years filled with water that could be utilized by defendants if it were permitted by plaintiff to flow on down the river channel. The evidence further shows that during the twenty-two years next preceding the trial of this case there was but one season in which it was unnecessary for plaintiff to draw all of the water from its reservoir to enable its stockholders to properly irrigate their crops, and that water impounded therein during the high-water season was held over until the following spring. Therefore, as I view the record, the chances that the Gunnison Irrigation Company may some

time in the future store more water in its reservoir than will be necessary to meet the requirements of its stockholders after June 15th and during the low-water period are so remote and improbable that it is unnecessary for this court to make any order or suggestion in relation thereto. The evidence shows conclusively that unless the duty of water on the 7,250 acres of land irrigated from the company's canals, as fixed by the court, is too great or high—and plaintiff concedes that it is not—the reservoir, when filled to its full capacity and the natural or current flow of Sanpitch river, is not more than sufficient after June 15th to supply the amount of water to which plaintiff is entitled.

The parties to the action stipulated during the progress of the trial "that whatever plaintiff's rights are determined to be they are superior to the rights of defendants" to the waters of Sanpitch river. And defendants concede that "plaintiff is entitled to water from the winter flow and high-water flow to fill its reservoir to its present capacity." The trial court found, and the finding is not assailed, "that plaintiff is entitled to water from the winter flow and high-water flow to fill its reservoir to its present safe capacity; that the stockholders of the plaintiff have under cultivation and entitled to irrigate, and a primary right to the use of water for irrigation thereof, 7,250 acres; that the duty of water thereon from the beginning of the irrigation season to the 15th day of June of each and every year is hereby fixed at fifty acres to the second foot; and from June 15th of each and every year to the close of the irrigation season is hereby fixed at sixty-five acres to the second foot."

Referring to the foregoing finding of fact counsel for respondent, Gunnison Irrigation Company, in their discussion of the case in their printed brief, say:

"The court found, and we think that such finding is fully supported by the evidence in this case, that we were entitled to water for 7,250 acres of land."

And again:

"The court found, and such finding is fully supported by the evidence, that the duty of water on said land from the

beginning of the irrigation season to the 15th day of June of each and every year is one second foot of water for fifty acres of land; and from June 15th of each and every year to the close of the irrigation season one second foot of water for each sixty-five acres of land.''

Appellant in its printed brief concedes that it is ''not entitled to any of the waters in dispute until the right of respondent to the quantity above mentioned [referring to the amount of water awarded respondent by the court] has been fully supplied or adequately provided for.'' And again respondent says:

''Defendants have no desire to participate in the benefits of plaintiff's reservoir. Their only desire is that plaintiff be limited to the quantity it appropriated prior to the initiation of defendants' rights.''

Appellant further says:

''If there is any other way by which such distribution can be made than by using the reservoir as a factor in the problem defendants will readily accept the alternative.''

The extent of defendant's rights to impound, divert, and use water from Sanpitch river and its tributaries is clearly defined and fixed in the court's decision, and the decision in that regard is not assailed. In fact respondent, the Gunnison Irrigation Company, not only approves of the decision on that point, but is in this court vigorously defending it. In other words, under the decision, which respondent concedes correctly reflects its rights as established by the evidence, the company's right to store water in its reservoir and to take from Sanpitch river and its tributaries is limited to an amount that will furnish it a continuous stream, flowing 145 second feet from the beginning of the irrigation season, which the evidence shows is about the 15th of March or 1st of April, until June 15th, and from June 15th until the close of the irrigation season a continuous stream, flowing 111.54 second feet. Therefore, when the water from the two sources of supply, namely, the reservoir and the natural or current flow of the river and its tributaries, exceeds the amount awarded to respondent by the court for the irrigation of 7,250 acres heretofore irrigated by

its stockholders, the defendants are entitled to divert and take from the natural or current flow of the river as much of such excess as they may require for the irrigation of their lands.

The record, as I view it, clearly shows that defendants are not entitled to have distributed to them any of the reservoir water. In fact, as hereinbefore pointed out, they disclaim having any property right or interest whatever in or to the reservoir or to the water stored therein. In the printed brief of respondent, referring to the court's decision set forth in the foregoing opinion prepared by Judge STEPHENS wherein the trial court holds that the excess water, if any, in the reservoir "may be measured out to the defendants," etc., it is said:

"We agree with plaintiff that the judge had no authority to make such an order or provision and that as it stands it is wholly outside of the issues. We agree that the provision referred to is void and should be set aside or modified to conform to his manifest intention."

What defendants do claim is—and I think the claim, under the court's decision which the Gunnison Irrigation Company concedes to be just and sound, is meritorious and well founded—that whenever during the irrigation season after the high water commences to flow, it is made to appear that the water stored in the reservoir and the natural or current flow of the river and its tributaries combined is more than sufficient to supply respondent during the remainder of the irrigation season with a continuous flow equal to the volume awarded it by the court, the defendants are entitled to have an amount equal to the excess, or so much thereof as their necessities require, distributed to them when it can be done without depriving certain of respondent's stockholders of water who use water from the tributaries of the river on lands so situated that they cannot be supplied with water from the reservoir.

There is a sharp conflict in the evidence respecting the duty of water on the lands irrigated from respondent's canals and ditches. Respondent's witnesses, one a civil engineer who was, and for more than ten years had been, familiar with the irrigation of these lands, and others who were practical farm-

ers who for many years have owned and irrigated land under
respondent's canals, testified that the duty of water on these
lands is from thirty to fifty acres to the second foot; the
amount of water required varying according to the difference
in the character of the soil. Two witnesses for defendants,
one a civil engineer, but neither of them farmers, testified
that the duty of water is from sixty-five to ninety acres to the
second foot. The trial court in arriving at its decision may
or may not have made deductions from the evidence on this
point that substantially reflect the vested rights of the Gunni-
son Irrigation Company. In view of the far-reaching effect
of the decision and the impossibility of correcting the error in
case one has been made by the court in fixing the duty of
water, I would be in favor of remanding the cause, with direc-
tions to the trial court to set aside the decision in that regard
and enter a temporary decree, continuing the same in force
for two or more years, and to appoint a commissioner to make
measurements, with the assistance of a competent civil engi-
neer, of the waters used in the irrigation of the lands, and
thus ascertain to a reasonable degree of certainty the duty of
the water, were it not for the fact that counsel for respondent
vigorously support and defend the decision and counsel for
appellant approve, though somewhat reluctantly, of it. Under
these circumstances this court is precluded from making such
order.

CORFMAN, J.

In view of the stipulation entered into by the parties to
this action relative to the duty of water and the acreage for
which a primary right to the use of the waters involved is
awarded to the respondent, I concur in the prevailing opinion
of my Associates in that regard. However, I concur in the
conclusions reached by Mr. Justice McCARTY that, inasmuch
as the respondent's right to store water in its reservoir for
future use was not involved in the action, the finding made
in the prevailing opinion, to the effect that, if it should be
ascertained at any time that respondent's storage of water is

in excess of the quantity of water awarded the respondent under the decree, the excess belongs to appellant, and, on its demand, shall be released for its use, is wrong, and is not justified by the record before this court.

There may be times—in fact, the record shows there are times—when a storage of water in respondent's reservoir will not conflict with any right of appellant to use water beneficially. In other words, when if not stored it will otherwise run to waste. At such times at least, if not always, I think the respondent has a vested right to store water to secure for itself sufficient storage to meet the exigencies of the varying seasons from year to year so as to reasonably assure for itself sufficient water for the irrigation of the 7,250 acres it is conceded respondent is entitled to under the stipulation of the parties and the finding of the trial court. Furthermore, I am unable to conceive of a right in the appellant to require respondent to release at any time water stored by respondent in its reservoir when it will otherwise run to waste and it cannot be used beneficially by appellant except by storage in respondent's reservoir.

Adhering to the doctrine that "beneficial use shall be the basis, the measure, and the limit of all rights to use of water in this state," the storage of water in respondent's reservoir to meet the exigencies of the seasons ought not to be held as conflicting therewith in the slightest degree. Again, storage by respondent at a time when the water would otherwise run to waste and could not be beneficially used by appellant does not conflict with the right to a beneficial use provided for by the statutes and adhered to by all the decisions of this court. Storage of water under these circumstances gives rise to a question not involved in this action, and, if I correctly read the prevailing opinion with respect to such waters, it is to the effect that water stored by respondent under these circumstances may not be held in its reservoir, but shall be released for the appellant's use. The opinion holds:

"It being adjudged that respondent has no title or right to the use of waters stored in excess of the amount awarded by the trial court, it follows that respondent cannot retain such

waters in its reservoir, nor can it require appellant to purchase the same.''

I am unable to discover by what process of reasoning my Associates arrive at the conclusion that, after respondents have, at great labor and expense, constructed a reservoir in which it may be able to impound water that would otherwise run to waste, it may not rightfully retain it in its reservoir and require the appellant, or any other seeking its use, to compensate for it. It would seem that under such conditions there can be no interference or conflict with the doctrine of beneficial use as the foundation of right, and that the decree here should not require any water thus stored to be released by respondent for appellant's benefit.