### RICHFIELD COTTONWOOD IRR. CO. v. CITY OF RICHFIELD

No. 5303.   Decided July 27, 1934.   (34 P. [2d] 945.)

J. H. *Erickson,* of Provo, for appellant.

G. T. *Bean,* of Richfield, for respondent.

ELIAS HANSEN, Justice.

Plaintiff and defendant each seek, in this suit, to have quieted its claimed right to the use of the water of Cottonwood creek. The court below awarded defendant a first and

prior right to a stream of 3 cubic feet per second measured at the mouth of Cottonwood Canyon. Plaintiff was awarded the right to the use of the remainder of the water of the creek. Plaintiff prosecutes this appeal. It contends that the city was awarded too much water. By its assignments of error appellant attacks the decree entered in the cause by the court below because of alleged error in the admission of evidence and because, as it claims, the evidence does not support the trial court's finding that the city is entitled to a first and prior right to a flow of 3 second feet of water of Cottonwood creek. Appellant concedes that the city, together with other water users not parties to this suit, are entitled to a first and prior right to a stream of 2 second feet of the water of Cottonwood creek measured at a point about 1½ miles above the mouth of Cottonwood Canyon.

A brief statement of the facts which are established without conflict in the evidence will be of aid in our discussion of the questions which divide the parties. Cottonwood creek is a natural stream of water which has its source in the mountains to the northwest of Richfield City in Sevier county, Utah. The creek is fed by rain, snow, and natural springs. From its source Cottonwood creek flows in an easterly direction and enters Sevier Valley at a point about a mile northwesterly from the city of Richfield. The amount of water which flows in the creek varies considerably from year to year and from day to day. Generally no appreciable amount of water flows in the canyon except during the months of April, May, and June. At other times of the year the creek is nearly dry except immediately after a heavy rainfall or a sudden melting of the snow on the watershed of the creek. A stream of 25 second feet or more flows in the creek during periods of high water. Part of the land owned by the stockholders of the plaintiff company, as well as part of the land within the city of Richfield, has been continuously cultivated and irrigated since the year 1870. The water of Cottonwood creek was diverted at that early

date and used to irrigate some of the land within the limits
of the present city of Richfield, as well as some of the land
now owned by the stockholders of plaintiff corporation. As
the population increased, more land was brought under
cultivation, with the result that in the course of years the
demand for water with which to irrigate such land exceeded
the supply of water available for that purpose. Richfield City
was incorporated in the year 1878. Soon after its incorpo-
ration it assumed the control and management of the water
which had theretofore been used by the landowners within
the townsite which was incorporated into the city. In addi-
tion to such water as the city may have used from Cotton-
wood creek since its incorporation, it owned and controlled
other water not involved in this litigation which other water
has its source in the so-called city spring which is west of
the city. That spring has a uniform flow throughout the
year of between 3 and 4 cubic feet per second of time. In
about the year 1906 the city of Richfield acquired 428.4
shares of water in the Sevier Valley Canal Company. Those
shares were purchased in part by the city and in part by the
owners of lots within the city which lots theretofore had
been without a sufficient water right, especially during the
latter part of the irrigation season.

The stockholders of the plaintiff corporation own and
have under cultivation about 500 acres of land. Of the land
so under cultivation, between 300 and 400 acres have been
irrigated. During the high-water period, which usually oc-
curs about the last of May, the water of Cottonwood creek
is diverted into several streams to enable the stockholders
of plaintiff company to irrigate as much of their land as
possible during the time water is available for that purpose.
Some of the stockholders of plaintiff company testified that
it required one second foot of water to mature a crop on 30
acres of land because their land was porous and water was
available for only a short time. Plaintiff corporation was
organized in 1900. Prior to its incorporation, the landowners
whose lands were irrigated by the water of Cottonwood

creek maintained a voluntary association by which they controlled and distributed the water of the creek to the persons entitled thereto. When plaintiff company was organized the incorporators conveyed to the company their rights to the use of the water of Cottonwood creek. The stockholders of plaintiff corporation depend solely upon Cottonwood creek for water with which to irrigate their land. At one time water was pumped from the Sevier Valley Canal to supplement the water derived from Cottonwood creek, but the cost of power to operate the pumps was so great that the stockholders of plaintiff company were compelled to abandon that means of securing additional water. Under date of September 28, 1898, a decree was entered in the district court of Sevier county in a suit wherein Peter Jensen and H. P. Hansen were plaintiffs and the city of Richfield was defendant. It was ordered and adjudged in that decree that plaintiffs are entitled to one-half of the flow of Cottonwood creek "when it shall have subsided at their dam and headgate to a volume of two cubic feet per second. That when said stream shall have so subsided or at any time thereafter plaintiffs shall take the whole of said stream into their canal —conduct it to the head of their orchard, and there by suitable device divide the same and deliver one-half thereof to the city at its headgate in said Canyon, provided that when plaintiffs take said stream, they shall take the whole thereof and divide it in the manner aforesaid. That when the volume shall be reduced in quantity of flow, at plaintiffs' headgate to 10-80/100 cubic feet per minute then the plaintiffs are the owners, and entitled to the same, and the whole thereof, and shall divert, the whole thereat to their own use for the remainder of the season. * * * Plaintiffs are restrained from * * * interfering in any way with the said water at any time when it shall be in volume of 3 second feet, at defendant's headgate or at all till it shall be reduced to 2 second feet at plaintiffs' headgate." The point of diversion referred to in the decree above mentioned was located about 1½ miles above the mouth of Cottonwood Canyon. No

water, however, had been diverted from that point for several years prior to the time this suit was begun. At the time of the trial of this cause and for several years prior thereto the water of the creek was diverted at or below the mouth of Cottonwood Canyon. It is made to appear that there is a substantial loss of the water of the creek in flowing the 1½ miles from where it was to be diverted by Jensen and Hansen, as provided for in the decree, to the mouth of the canyon where the city now claims the right to divert the water. Such loss of water is apparently due to the porous nature of the bed of the creek. Defendants offered in evidence various extracts from the minutes of the city council of Richfield City pertaining to the water of Cottonwood creek. The minutes were received in evidence over timely objections of plaintiff. Error is assigned because of such rulings.

The minutes so received in evidence show that beginning with the year 1882 and extending up to the commencement of this suit, Richfield City from time to time levied assessments on the city lots which were supplied with water from Cottonwood creek. The minutes also show that from time to time money was expended by the city for the purchase of new rights of way to convey water from Cottonwood creek to the city and for the construction and repair of dams and ditches to divert and distribute the water of that creek to the city. It further appears from the minutes that a number of owners of lots within the city petitioned the city council to permit them to use water from Cottonwood creek on their lots. A number of such petitions were granted. In other instances the city council required that the petitioners secure a grant from the other water users of Cottonwood creek before any action be taken by the council on the petition.

No error was committed by the trial court in receiving in evidence the minutes of the city council with respect to the water of Cottonwood creek. The minutes were kept by

various recorders of the city. The law requires that
such minutes be kept. Rev. St. Utah 1933, 15-6-44. ■
Being public records they were competent evidence of
the facts therein recited. Jones, Comm. on Evid. (2d Ed.)
vol. 2, p. 1409, § 760. There was also received in evidence
over plaintiff's objection the record of a declaration of
water claims of Richfield City which was recorded on Aug-
ust 5, 1898, in Book B, p. 7, of record of water claims in the
files of the county recorder of Sevier county, Utah. It ap-
pears that on August 4, 1898, W. H. Seegmiller, as mayor
of Richfield City, signed and verified a document entitled
"Declaration of Water Claims and Appropriations hereto-
fore acquired," and on the following day filed and recorded
the same with the county recorder as heretofore indicated.
The document so made and recorded recites that the city
of Richfield owns and uses, and since 1878 has claimed,
owned, and used, a stream of 492 cubic feet per minute
of the water of Cottonwood creek, and that when the
flow of that creek does not exceed a flow of 167.3 cubic
feet per minute the city claims the whole thereof. It is fur-
ther averred that Richfield City has from time to time
cleaned out and improved the springs which feed Cotton-
wood creek, has diverted the water of the creek near the
mouth of Cottonwood Canyon, and used the same for culi-
nary and domestic purposes, and for the irrigation of about
600 acres of land within the corporate limits of Richfield
City. It is also recited that the waters mentioned in the affi-
davit "are not claimed as a new project but are an old ac-
quired right to use appropriated water taken and diverted at
the time of the early settlement of Sevier Valley," and that
"this notice is to comply with the requirements of sections
1272 1268 and 1269, Rev. Stat. of Utah 1898." The statutes
mentioned in the foregoing document provided that:

"Sec. 1268. Any person hereafter desiring to appropriate water
must post a notice in writing in two conspicuous places, one copy at
the nearest post office to the point of intended diversion, and one
copy at the point of intended diversion stating therein:

"1. The number of cubic feet per second claimed.

"2. The purpose for which it is claimed and the place of intended use, and if for irrigation the number of acres to be irrigated.

"3. The means of diversion, with size of flume, ditch, pipe, or aqueduct, by which he intends to divert it.

"4. The date of the appropriation.

"5. The name of the appropriator."

"Sec. 1269. Within twenty days after the date of appropriation the appropriator shall file for record with the county recorder of the county in which such appropriation is made, a notice of appropriation, which, in addition to the facts required to be stated in the posted notice as hereinbefore prescribed, shall contain the name of the stream from which the diversion is made, if such stream have a name, and if it have not, such a description of the stream as will identify it, and an accurate description of the point of diversion on such stream, with reference to some natural object or permanent monument. The notice shall be verified by the affidavit of the appropriator, or some one in his behalf, which affidavit must state that the matters and facts contained in the notice are true."

"Sec. 1272. Persons who have heretofore acquired rights to the use of water may within one year after the approval of this title file for record in the office of the county recorder of the county in which the water right is situated, a declaration in writing (except notice be already given of record as required by this title or a declaration in writing be already filed as required by this section), containing the same facts as required in the notice provided for record in sections twelve hundred and sixty-eight and twelve hundred and sixty-nine, and verified as required in section twelve hundred sixty-nine, in case of notice of appropriation of water; provided, that a failure to comply with the requirements of this section shall in no wise work a forfeiture of such heretofore acquired rights, or prevent any such claimant from establishing such rights in the courts."

It is urged on behalf of plaintiff that the court below was in error in admitting in evidence the record of the document above mentioned. Counsel for plaintiff are right in their contention that the city of Richfield could not divest plaintiff or its predecessor in interest of any rights to the use of the water of Cottonwood creek by the execution and recordation of the document in question, but the record of such document was properly received in evidence for the purpose of showing the nature and extent of

the claim made by Richfield City in and to the water of Cottonwood creek. Evidently such was the view entertained by the court below because the judgment appealed from does not award to the city the amount of water claimed by it as shown by the record of that document.

There is a conflict in the evidence as to the amount of water which Richfield City has diverted from Cottonwood creek especially during the year immediately preceding the commencement of this suit. It is established by a clear preponderance of the evidence that the city diverted water from Cottonwood creek to the extent of a "five acre stream" prior to the construction of the Sevier Valley Canal. While there is some evidence that the city has not diverted any considerable quantity of water from that creek since the construction of the Sevier Valley Canal, such evidence does not justify the conclusion that the city has abandoned its claim to the water of that creek or that the plaintiff has acquired additional rights against the city to the use of the water of Cottonwood creek by adverse use. Indeed, it is conceded by plaintiff on this appeal that the city has a right to some of the water of Cottonwood creek. Appellant here complains that the city was awarded more water than the evidence justified. A number of witnesses testified and gave their judgment as to the size of the of the "five acre stream" which had been used by the city in terms of cubic feet per second of time. It is made to appear that the "five acre stream," as understood by the witnesses who testified, was such a stream as could have advantageously been used to irrigate five acres at one time. The witnesses who testified as to the size of the five-acre stream which was used by Richfield City varied in their judgment. Some placed the size of such a stream as low as $1\frac{1}{4}$ cubic feet per second of time; others placed it as high as 3 cubic feet per second of time. The size of a stream necessary to irrigate five acres at one time depends, according to some of the witnesses, upon the nature and slope of the land to be irrigated. The answer filed by the defendant in this cause

is not entirely clear as to the amount of water claimed by it. In paragraph 6 of the answer it is alleged that Richfield City is entitled to the use of a stream of 3 cubic feet per second, while in paragraphs 4 and 6 of the further answer and counterclaim of the defendant it is alleged that the city at an early date diverted from Cottonwood creek "approximately 167.3 cubic feet per minute flow, together with such portion of the high waters thereof as were necessary to be distributed for the use of the inhabitants and residents of said Richfield Townsite." It will be observed that a stream of 167.3 cubic feet per minute of time is not 3 but approximately 2.79 cubic feet per second of time. It will also be observed that in the document signed by W. H. Seegmiller as mayor of Richfield City and recorded as heretofore indicated, it is recited that when the water of Cottonwood creek does not exceed 167.3 cubic feet flow per minute that the city of Richfield claims all of the water coming down said creek. Viewing the evidence offered at the trial in the light of the pleadings, defendant is not entitled to a first and primary right to the water of Cottonwood creek in excess of a flow of 2.79 cubic feet per second of time.

While there is evidence tending to show that defendant has, for many years past, diverted water from Cottonwood creek with which to irrigate the land within the city, defendant offered no evidence which shows the amount of land irrigated by such water or the duty of water upon the land so irrigated. The only evidence touching those questions comes from J. R. Barker, a witness called by plaintiff. He testified that in his opinion a flow of 2 cubic feet per second in addition to the water which the city received from the city spring was sufficient to supply the needs of the city. We have a statute which provides that "beneficial use shall be the basis, the measure and the limit of all rights to the use of water in this state." Rev. St. Utah 1933, 100-1-3. Such has been the law in this jurisdiction ever since the territory of Utah was organized. This court has in numerous cases had occasion to apply that law. Among

such cases are *Sowards* v. *Meagher,* 37 Utah 212, 108 P. 1112; *Salt Lake City* v. *Gardner,* 39 Utah 30, 114 P. 147; *Big Cottonwood Tanner Ditch Co.* v. *Shurtliff,* 49 Utah 569, 164 P. 856; *Cleary* v. *Daniels,* 50 Utah 494, 167 P. 820; *Gunnison Irr. Co.* v. *Gunnison Highland Canal Co.,* 52 Utah 347, 174 P. 852; *Mt. Olivet Cemetery Ass'n* v. *Salt Lake City,* 65 Utah 193, 235 P. 876; and *Big Cottonwood Lower Canal Co.* v. *Cook,* 73 Utah 383, 274 P. 454. The mere fact that the city of Richfield has for many years diverted water from Cottonwood creek does not give it the right to the use of such water nor establish a right thereto. It must be made to appear that the water diverted has been put to a beneficial use. As bearing upon that question the area irrigated and the duty of water on land irrigated are of controlling importance. The record before us being silent upon those matters, the judgment appealed from is without sufficient support in the evidence, and this court is powerless to enter a proper decree or to direct the court below to enter a decree.

It follows that the judgment should be reversed and direction given to the court below to grant a new trial. Such is the order. Costs to appellant.

STRAUP, C. J., and FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., concur.